**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jaleh NAZEMIAN, Defendant–Appellant.**

No. 87–5298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1990.

Decided Oct. 21, 1991.

---

**3.** Additionally, the prison officials' qualified immunity, as discussed earlier, bars Johnson's claim for money damages.

Mary F. Gibbons, North Hollywood, Cal., for defendant-appellant.

Richard G. Rathmann, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, BOOCHEVER and WIGGINS, Circuit Judges.

FLETCHER, Circuit Judge:

Jaleh Nazemian appeals her conviction for conspiracy to possess with intent to distribute heroin, unlawful use of a communication facility in the commission of a drug trafficking crime, foreign travel in aid of narcotics trafficking, and interstate travel in aid of narcotics trafficking. She asserts that the district court's admission of Drug Enforcement Administration ("DEA") Agent Eaton's testimony regarding statements she (appellant) made through an interpreter violated the confrontation clause and the rules of evidence regarding the admission of hearsay. She further contends that the district court erred in admitting testimony of the informant as to statements made by a deceased co-conspirator, and that the district court erred in admitting the nature of her husband/co-defendant's prior conviction for conspiracy and possession of heroin.

We find that the challenged statements properly were admitted and that Nazemian waived any claim regarding admission of her husband's prior conviction. Accordingly, we affirm the conviction.

## FACTS

Nazemian was indicted, along with Javad Ebtehaj–Rashti (her husband), Mahmood Vazieri (her son), Hadi Kashanian, Delshad Nilchian, Martin Trowery, Elizabeth Trowery and Hossein Ahly, for conspiracy to possess with intent to distribute heroin and various substantive counts arising from the conspiracy. The indictment specified thirty-three separate overt acts, beginning on March 22, 1985, when Ebtehaj–Rashti was alleged to have delivered approximately one half kilogram of heroin to an undercover DEA agent, and ending on January 27, 1987, when defendant Martin Trowery was alleged to have taken delivery of approximately four kilograms of a substance that he believed to be heroin.

Nazemian's alleged actions on behalf of the conspiracy involved repeated conversations with the confidential informant, Nasser Gostar, beginning in May, 1986, regarding procurement of heroin from Pakistan[1], and meetings in Paris with the confidential

---

1. Ultimately, the plan to purchase heroin from defendant Hadi Kashanian in Pakistan was thwarted because Kashanian refused to deal with Nazemian and Ebtehaj–Rashti without advance payment. They allegedly owed him $100,000 from a prior deal involving 22 "books" of heroin. The DEA agents decided not to risk that Kashanian might apply any new payment to the prior transaction, and instead conducted a "reverse" operation in which they delivered sham heroin to the prospective buyers but led Nazemian to believe that the heroin had in fact been purchased as planned. Nazemian also claims Hadi Kashanian's statement to the confidential informant regarding his prior dealings with Nazemian and Ebtehaj–Rashti was admitted erroneously by the trial court.

informant and an undercover DEA agent posing as a wealthy Frenchman, "Mr. Francois," who was interested in investing in the deal. Nazemian additionally was alleged to have facilitated communications with Ebtehaj–Rashti, who was locating a purchaser for the heroin from prison at Safford, Arizona.

Nazemian pled not guilty to all counts against her and proceeded to trial before a jury, along with defendants Martin Trowery, Ebtehaj–Rashti and Ahly.[2] Nazemian relied on an entrapment defense at trial, arguing that but for enticement by the confidential informant, Nasser Gostar, including offers to assist her with her immigration status and to arrange for her husband's release from prison, she would not have entered into the narcotics transaction. Toward the end of trial, the district court dismissed the indictment against Ebtehaj–Rashti on double jeopardy grounds because he had already been convicted for the first overt act alleged in the indictment, involving delivery of a half kilo of heroin on March 22, 1985. The jury acquitted defendant Ahly and found defendants Nazemian and Martin Trowery guilty of all counts.

Appellant was sentenced to four years on each of the six counts of which she was convicted, all such terms to run concurrently. She has been paroled to the custody of the Immigration and Naturalization Service. She is an Iranian citizen and is seeking relief from pending deportation proceedings which have arisen out of the conviction. Nazemian claims that the three erroneous admissions of evidence by the district court materially prejudiced her entrapment defense.

## DISCUSSION

### A. Admission of Nazemian's Statements Made Via An Interpreter.

 Nazemian argues that the testimony of Agent Eaton as to statements made by her during the course of four meetings held in Paris in June, 1986, was inadmissible hearsay and violated the confrontation clause because Agent Eaton was not able to understand her statements directly, but only heard them as translated by an interpreter, who did not testify at trial.[3] Nazemian did not object to the admission of the testimony at trial. However, we have held repeatedly under the plain error doctrine that a contention that the government failed to comply with the confrontation clause involves substantial rights and thus must be reviewed even in the absence of a timely objection. See, e.g., United States v. Miller, 771 F.2d 1219, 1233 n. 6 (9th Cir.1985); United States v. Ordonez, 737 F.2d 793, 799 (9th Cir.1984).

In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court set out a two-pronged test for evaluating alleged confrontation clause violations. Where a defendant claims that an out-of-court statement was received into evidence in violation of the confrontation clause, the record must show that the government produced the declarant or presented facts showing that such person was unavailable. Secondly, the government must prove that the declarant's statements are trustworthy. Ordonez, 737 F.2d at 802.

Before we reach the two-prong analysis, however, we must consider as a threshold matter whether the interpreter or Nazemian should be viewed as the declarant.[4] If

2. Defendants Nilchian and Kashanian died prior to trial, and defendants Elizabeth Trowery and Mahmood Vazieri pled guilty.

3. The interpreter was a friend of the confidential informant. Agent Eaton had met with the interpreter once prior to the meetings in order to determine the compatibility of their French. At trial, the agent was able to identify the interpreter only by her first name and to state that he believed her to be Iranian.

4. The focus of our inquiry is Agent Eaton's testimony repeating the content of Nazemian's

out-of-court statements through the interpreter. Nazemian complains of Agent Eaton's inability to testify as to the portions of conversation which took place in Farsi and were not translated into French. However, the fact that part of the conversation was not translated, and therefore was not included in Agent Eaton's testimony, does not directly implicate either the hearsay rule or the confrontation clause. That Agent Eaton was exposed to only part of the conversation might, however, be a factor in evaluating reliability of the translation for purposes of the trustworthiness prong of the con-

the statements properly are viewed as Nazemian's own, then there would be no confrontation clause issue since Nazemian cannot claim that she was denied the opportunity to confront herself. This is somewhat analogous to an adoptive admission, which some courts have held to "avoid[ ] the confrontation problem because the words of the hearsay become the words of the defendant." *Poole v. Perini,* 659 F.2d 730 (6th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 450 (1982). This threshold question likewise controls the hearsay analysis. If the statements are viewed as Nazemian's own, they would constitute admissions properly characterized as non-hearsay under Fed.R.Evid. 801(d)(2)(C) or (D).

Authority is sparse on the treatment of extrajudicial statements through interpreters.[5] While many of the early state cases and a number of contemporary state cases take the position that the statement of an interpreter constitutes inadmissible hearsay, *see* cases collected in Annotation, *Admissibility of Testimony Concerning Extrajudicial Statements Made To, or in Presence of, Witness Through an Interpreter,* 12 A.L.R.4th 1016, 1021–22 (1982), all of the federal circuits which have considered the question recently have taken the view that the translator may in some circumstances be viewed as an agent of the defendant, and the translation hence be attributable to the defendant as her own admission. *See United States v. Da Silva,* 725 F.2d 828, 831 (2nd Cir.1983); *United States v. Beltran,* 761 F.2d 1, 9 (1st Cir. 1985); *United States v. Alvarez,* 755 F.2d 830, 859–60 (11th Cir.1985), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). Other cases have taken the view that there is no hearsay problem where the interpreter acts merely as a "language conduit," *United States v. Koskerides,* 877 F.2d 1129, 1135 (2nd Cir.1989); *see also United States v. Ushakow,* 474 F.2d 1244, 1245 (9th Cir.1973) (per curiam) (holding testimony of interpreter admissible where he was acting as a mere conduit); or where the testimony is offered to prove that a statement was made and not the truth of the statement. *United States v. Tijerina,* 412 F.2d 661 (10th Cir.), *cert. denied,* 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969) (testimony of witness in prosecution for contempt of order prohibiting public statements about a pending case admissible even though the witness heard the statements only via translation by a police officer sitting next to him).

This circuit has not squarely addressed the issue of how to treat extrajudicial statements made through an interpreter when the testifying witness was unable to understand the original language of the declarant and can testify only to the words of the interpreter. In *Ushakow,* the question was whether the testimony of the *translator* as to a conversation between the defendant and a third party would be admissible where the defendant only understood one of the languages involved. The panel held that where the translator acted as a mere conduit, the statements made by both parties would be treated for hearsay purposes as if the defendant and the third person conducted the conversation in the same language. The Ninth Circuit has touched on the question of when the "agency-language conduit theory" would apply to testimony by the "listener" in *United States v. Felix–Jerez,* 667 F.2d 1297, 1300 n. 1 (9th Cir. 1982) (stating that where the guard/translator "was not appointed by a court as an interpreter ... [and] was not named or appointed by the defendant to act as his agent," and where "there was an obvious conflict of interest between them," the agency-language conduit theory was inapplicable).

*Felix–Jerez* assumes, without deciding, that this circuit would apply the agency or

---

frontation clause analysis, were we to reach it, or for purposes of determining whether the interpreter was an accurate conduit. (*See* discussion of agency/conduit theory *infra* at 527–28.)

**5.** Most of the case law and commentary considers the question in the context of a hearsay objection rather than in relation to the confrontation clause. However, the threshold analysis as to whether the translated statements should be considered the original speaker's own is equally applicable to both concerns.

language conduit theories in some circumstances, but suggests a more rigid and formalistic application of the agency theory than that adopted by the other circuits which have addressed the question. We need not adhere to *Felix–Jerez*'s suggested strict approach since its treatment of the issue was clearly dicta.[6] From a practical standpoint, were we to adopt the approach taken by *Felix–Jerez*, rigidly requiring either that a court appoint or the defendant himself actually provide the translator in order to attribute the statements to the defendant, it would result in a largely arbitrary distinction between the admissibility of statements by English and non-English speakers and between non-English speakers who bring their own translator and those who do not.[7]

■ The better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker. One commentator has asserted that "[p]rovided the interpreter has a sufficient capacity, and there is no motive to misrepresent, the interpreter is treated as the agent of the party and the statement is admitted as an admission unless circumstances are present which would negate the presumption of agency." 4 J. Weinstein & M. Berger, *Evidence* ¶ 801(d)(2)(C)[01] at 801–217 n. 34 (1988); *see also*, 6 Wigmore Evidence § 1810(2) at 376 and 812(4) at 283. We need not resolve here whether there is a presumption of agency, or where the burden of proving agency or lack of agency lies, because in this case we review only for plain error and Nazemian has offered nothing to suggest that the interpreter should

not have been treated as a language conduit.

The circuits which have considered the question have recognized a number of factors which may be relevant in determining whether the interpreter's statements should be attributed to the defendant under either the agency or conduit theory, such as which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated. *See, e.g., United States v. Santana*, 503 F.2d 710, 717 (2d Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974). Nazemian argues that a number of these factors tilt the scales in favor of a finding that the interpreter's statements are not properly attributable to her. She contends that the interpreter, as a friend of the confidential informant, was aligned with the DEA; that there was no evidence presented as to the interpreter's language competence; and that the translations were additionally rendered unreliable because they were incomplete in nature.

Nazemian points to no specific evidence of bias on the part of the interpreter, just the fact that she was provided by the government informant. Other circuits have not held that the fact that the interpreter is provided by the government, in and of itself, is dispositive of the agency question. *See United States v. Da Silva*, 725 F.2d at 832 (interpreter was a customs official supplied by the DEA); *United States v. Koskerides*, 877 F.2d at 1135 (in-

6. In *Felix–Jerez* we were not addressing the admissibility of *testimony* by the listener as to the defendant's statements via the translator, but the admissibility of a typed transcription of the listener's notes. We found that such a transcription could not be considered an admission by the defendant where the defendant did not read, review or sign the written statement. The opinion discussed the translation issue only in a footnote indicating that the problem was further compounded by the language difficulty. *Felix–Jerez*, 667 F.2d at 1300, n. 1.

7. Such a rule would clearly have the most impact in the area of undercover investigations. Where translation is needed in the course of an

open investigation or interrogation following arrest, there is no reason why the interview cannot be recorded and/or the translation cannot be conducted by a certified translator who can be available to testify at trial. Where, however, translations are required during the course of undercover narcotics negotiations, the police may not be in a position either to record the conversations or to dictate which side provides an interpreter. Under such circumstances, it would be arbitrary to admit statements made by those drug traffickers who happen to provide the translator for the negotiations while excluding the statements of those who do not.

terpreter was employed by the American embassy and procured by the government); *United States v. Alvarez*, 755 F.2d at 859 (translation was by one undercover agent for the benefit of another). We likewise do not find it dispositive in this case.

Although the government presented no formalized evidence of the interpreter's competence, such as language degrees or certifications, the fact that the interpreter continued in that role over a prolonged period and multiple meetings suggests that the translation must have been competent enough to allow communication between the parties. Again, Nazemian points us to no specific occasions where Agent Eaton's testimony repeating the translated statements did not accurately reflect what she said to him.

Nazemian's argument regarding the incompleteness of the translations, which relies heavily on the case of *Kalos v. United States*, 9 F.2d 268 (8th Cir.1925) (court found no agency relationship sufficient to impute the alleged interpreter's statements to the defendant), is likewise unpersuasive. *Kalos* is readily distinguishable since the defendant in *Kalos* had not authorized the interpreter to act as his agent, and the "interpreter" simply did the talking, rather than translating statements actually made by the defendant. Thus, the defendant had no knowledge of what was being said by either the purported interpreter or the party with which he was conversing. There was also a strong suggestion by the court in *Kalos* that the "interpreter" may have had an interest in deflecting blame from himself.

In the present case, the interpreter had no role other than translating statements between Agent Eaton and the Farsi-speaking individuals, and was clearly viewed as an interpreter by all parties over the course of repeated, lengthy meetings. Throughout the trial in this case, counsel for Nazemian referred to the interpreter as such. *See, e.g.*, R.T. 188. In addition, Nazemian herself, when she testified at trial regarding the meeting with "Mr. Francois," stated "Well, of course I couldn't speak French. There was an interpreter." R.T.

814. Finally, unlike the situation in *Kalos*, the portions of the conversation which were *not* translated were in Farsi, not French, so that Nazemian was able to understand all of the conversations at the meeting except for the French translations themselves.

Given the setting of the conversation in this instance, i.e., an undercover drug negotiation where the DEA agent's goal was to persuade Nazemian of his authenticity and to arrange a drug translation, there would not be any motive to mistranslate, even were the interpreter biased toward the DEA. Indeed, mistranslation potentially could have threatened the DEA's objectives. Finally, both the confidential informant and Ms. Nazemian took subsequent actions which were consistent with Agent Eaton's testimony as to the content of those conversations, providing additional evidence that the translations were accurate.

Under the circumstances of this case, it was not plainly erroneous for the district court to treat the interpreter as a mere language conduit or as Nazemian's agent for purposes of conducting conversations with Agent Eaton. Because Nazemian and the translator are therefore treated as identical for testimonial purposes, the admission of Agent Eaton's testimony as to Nazemian's translated statements created neither confrontation clause nor hearsay problems.

B. *Admission of Kashanian's Statement Regarding Prior Dealings.*

■ Nazemian next challenges the admission at trial of Nasser Gostar's testimony that Hadi Kashanian told him he would not sell heroin to him without advance payment because Ebtehaj–Rashti and Nazemian had never paid him for a prior heroin transaction. Nazemian contends that the statements, which implied that she was involved as a participant in a previous narcotics transaction, seriously undermined her proffered entrapment defense.

1. Admission As Statements of Co–Conspirator.

A statement of a co-conspirator is admissible against the other conspirators pursuant to the terms of Fed.R.Evid. 801(d)(2)(E) which provides in relevant part that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course of and in furtherance of a conspiracy." Counsel for defendants argued at trial that Kashanian's statement was not in furtherance of the conspiracy and, if anything, tended to thwart the conspiracy. The trial court admitted the statement, presumably on the basis that it was made in furtherance of the conspiracy.

We review the court's finding that the statements were made in furtherance of the conspiracy for clear error. *United States v. Smith*, 893 F.2d 1573, 1577 (9th Cir.1990) (citing *United States v. Smith*, 790 F.2d 789, 794 (9th Cir.1986)). Under the clearly erroneous standard, the district court's factual findings should not be disturbed unless the appellate court is left with the definite and firm conviction that a mistake has been committed. *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988).

The Ninth Circuit has strictly construed the "in furtherance of the conspiracy requirement." *See United States v. Foster*, 711 F.2d 871 (9th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir.1981) (holding that the "in furtherance requirement" has remained viable). Mere conversations between co-conspirators, or merely narrative declarations among them, are not made "in furtherance" of a conspiracy. *United States v. Layton*, 720 F.2d 548, 556–57 (9th Cir.1983) (*Layton I*), *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984) (narrations of past events inadmissible while expressions of future intent *are* admissible); *United States v. Eubanks*, 591 F.2d 513, 521 (9th Cir.1979). To be "in furtherance," the statements must further the common objectives of the conspiracy. *United States v. Yarbrough*, 852 F.2d at 1535. Examples of admissible co-conspirator statements include: statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities. *See id.* at 1535–36 and cases cited therein. When inquiring whether a statement was made "in furtherance of" a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement. *United States v. Zavala–Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988).

We are asked to review the admissibility of the confidential informant's testimony repeating Kashanian's statement that he was uncomfortable because of previous dealings he had with Nazemian and Ebtehaj, and that he was unwilling to do business on credit with them because he was still owed over one hundred thousand dollars from a previous transaction. The ultimate effect of Kashanian's statements was to thwart the part of the conspiracy which involved procuring the heroin from Kashanian in Pakistan. The government argues, however, that since the statement conveyed a condition of doing business, i.e., advance payment, it was intended to facilitate the common objective of consummating a deal by prompting such advance payment. While that rationale arguably applies to Kashanian's statement that he would require advance payment, it does not extend to his statement that such payment would be required because of nonpayment during prior drug transactions with Ebtehaj and Nazemian. The latter statement is purely historical, with no connection or purpose related to the conspiracy in question. It is therefore distinguishable from cases cited by the government such as *United States v. Friedman*, 593 F.2d 109 (9th Cir.1979)

(holding that that co-conspirators' discussion of their displeasure with one of the conspirators for taking excessive profit in an ongoing conspiracy was in furtherance of that conspiracy).

We conclude that the district court's finding that the statement was made in furtherance of the conspiracy was clearly erroneous. Thus, the statement was not admissible based on the co-conspirator exception set out in Rule 801(d)(2)(E).

## C. *Statement Against Penal Interest.*

 The government asserts, in the alternative, that Kashanian's statement properly could have been admitted under the hearsay exception for statements against penal interest, Federal Rules of Evidence 804(b)(3). Although the trial court did not rely on that exception to admit the statements, we may affirm admission of the evidence if an alternative theory would have justified its admission. *Cf. United States v. Knigge,* 832 F.2d 1100, 1107 (9th Cir.1987); *United States v. Gocke,* 507 F.2d 820, 824 n. 4 (8th Cir.1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975). The government urges that the admission of Kashanian's remarks as statements against interest should be reviewed only for plain error because Nazemian herself did not object to the admission of Kashanian's statements at trial, and now relies on objections raised by other defendants. Since we find that the statement properly could have been admitted as a statement against interest and would therefore affirm the district court under either standard of review, we need not resolve whether Nazemian is entitled to review only for plain error.

 Federal Rule of Evidence 804(b)(3) provides an exception to the hearsay rule where (a) the declarant is unavailable, and (b) the statement "so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the defendant's position would not have made the statement unless believing it to be true." There are three requirements which must be met before evidence is admissible as a declaration against penal interest when the statement is being offered to *exculpate* a defendant: (1) the declarant must be unavailable; (2) the statement must tend to subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true; and (3) there must be corroborating circumstances which indicate the trustworthiness of the statement. *Layton I,* 720 F.2d at 559.

It is undisputed that Hadi Kashanian was deceased and, therefore, unavailable at the time of trial. Kashanian's statement also meets the second, "against interest" requirement. We have held that the statement must (1) "solidly inculpat[e]" the declarant and (2) "be one that a reasonable person in the declarant's position would not have made unless it were true." *United States v. Monaco,* 735 F.2d 1173, 1176 (9th Cir.1984). Kashanian's statement indicated that he was involved in a heroin transaction, which clearly would tend to subject him to criminal liability. *See United States v. Slaughter,* 891 F.2d 691 (9th Cir. 1989) (unavailable witness's out-of-court statement that she, the defendant and the government informant had all used cocaine together "so far tended to subject" her to criminal liability that it should have been admitted as a statement against interest). Moreover, it was not made in circumstances which have been found to cast doubt on reliability; Kashanian was not in custody when he spoke to the confidential informant, he was not seeking to curry favor with anyone, and his statements do not appear to have been designed to shift blame from himself to others. *See* Fed. R.Evid. 804(b)(3) advisory committee's notes; *U.S. v. Magana–Olvera,* 917 F.2d 401, 408–09 (9th Cir.1990); *United States v. Monaco,* 735 F.2d at 1176–77. There is no reason to think Kashanian would be untruthful about the unpaid drug debt.

This circuit has not resolved whether the third requirement of corroborating circumstances applies to inculpatory statements,

such as the one at issue here.[8] A number of other circuits have read such a corroboration requirement into 804(b)(3) in order to satisfy the confrontation clause rights of an accused whose penal interest is implicated by the declarant's out of court statement. *See, e.g., United States v. Riley,* 657 F.2d 1377, 1383 n. 7 (8th Cir.1981) (citing *United States v. Alvarez,* 584 F.2d 694, 701 (5th Cir.1978)). In *Layton I,* 720 F.2d at 560–61, the panel did not reach the question of whether corroboration is required where the declaration is offered to *inculpate* a defendant because it found that such corroboration existed. Subsequent Ninth Circuit panels have likewise reserved the question of whether corroboration is required in such a circumstance. *United States v. Magana–Olvera,* 917 F.2d at 407 n. 5 (noting that the Fifth, Second, Eighth and Third Circuits have all required corroboration for inculpating statements but reserving the issue); *United States v. Holland,* 880 F.2d 1091, 1093 (9th Cir.1989) (same); *United States v. Candoli,* 870 F.2d 496, 509 (9th Cir.1989) (same); *United States v. Monaco,* 735 F.2d at 1176 (same).

 We likewise need not decide the question here, because even assuming the corroborating circumstances requirement applies, we find that it is met in this case. We have held in the context of exculpating statements that "the showing of corroborating circumstances must do more than tend to indicate the trustworthiness of the statements; they must clearly indicate it." *United States v. Ospina,* 739 F.2d 448, 452 (9th Cir.), *cert. denied,* 469 U.S. 887, 105 S.Ct. 262, 83 L.Ed.2d 198 (1984). Factors relevant to trustworthiness include the time of the declaration and the party to which it was made, the existence of corroborating evidence, the extent to which the declaration is actually against the declarant's interest, and the availability of the declarant as a witness. *Id.; see also United States v. Slaughter,* 891 F.2d at 698.

Here, the context in which the statement was made suggests its reliability; at a minimum, as discussed *supra,* none of the circumstances are present which would cause us to question Kashanian's motives in making the statement. The portion of the statement implicating Nazemian and Ebtehaj is closely entwined with Kashanian's solidly inculpatory admission of his involvement in narcotics trafficking, and Kashanian is clearly unavailable as a witness. Most importantly, other evidence and testimony at trial corroborates Kashanian's statement. Exhibit 6a, a translation of a letter which Nazemian wrote to Kashanian in order to convince him to transact business without advance payment, corroborates the existence of the prior transaction and debt. That Nazemian was able to compose the letter in a short period in the presence of the government informant, readily using code words for heroin such as "rugs" and "carpet," evidences her familiarity with the transaction and her likely participation in it. Indeed, Nazemian, in her own testimony at trial, confirmed the existence of the prior transaction and debt, though she disclaimed participation in the transaction and asserted that her knowledge of code words came solely from overhearing conversations between her husband and his fellow narcotics traffickers. The corroborating circumstances here are at least as clear as those we have found to be sufficient in other cases. *See, e.g., United States v. Candoli,* 870 F.2d at 509 (witness's testimony that declarant often had the keys to a restaurant provided sufficient corroboration of declarant's out-of-court statement that he had the only keys on the night of the fire, despite conflicting testimony by another witness that she had the keys on that night); *United States v. Slaughter,* 891 F.2d at 698 (defendant's testimony that government informant used cocaine provided sufficient corroboration of declarant's out-of-court statement, sought to be introduced by defendant, that infor-

---

**8.** Here, Kashanian's statement was not squarely "inculpatory," since it did not implicate Nazemian in the transaction for which she was being tried, but in an earlier transaction which was relevant to the collateral issue of predisposition.

Since we find sufficient corroboration, we need not decide whether the statement was truly "inculpatory" so as to require corroboration, assuming that corroboration is required.

mant used cocaine). We find that there were sufficient circumstances corroborating the trustworthiness of Kashanian's statement that it properly could have been admitted under Rule 804(b)(3).

■ The fact that an extrajudicial declaration may be admissible under the Federal Rules of Evidence does not establish compliance with the confrontation clause. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). A hearsay statement is admissible without violating the confrontation clause only if the declarant is unavailable and if the statements bear adequate "indicia of reliability." *Id.* An out-of-court statement is presumptively reliable if it "falls within a firmly rooted hearsay exception." *Id.* We have noted previously that the Supreme Court has not decided whether the declaration against penal interest is such an exception, although four justices have issued an opinion so finding. *United States v. Layton*, 855 F.2d 1388, 1405 n. 5 (9th Cir.1988) (*Layton II*), *cert. denied*, 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989) citing *Lee v. Illinois*, 476 U.S. 530, 551–52, 106 S.Ct. 2056, 2067–68, 90 L.Ed.2d 514 (1986) (Blackmun, J., joined by Burger, C.J., Powell & Rehnquist, JJ.). We have also observed that the circuits requiring corroboration for inculpatory statements have done so in order to satisfy the confrontation clause. *United States v. Candoli*, 870 F.2d at 510; *United States v. Monaco*, 735 F.2d at 1176.

■ Since the corroborating circumstances in this case also provide sufficient "indicia of reliability" to meet confrontation clause requirements, we again need not resolve whether a declaration against interest is a firmly rooted exception to the hearsay rule and thus presumptively reliable. *Candoli*, 870 F.2d at 510; *Layton II*, 855 F.2d at 1405 n 5. We hold that admission of the government informant's testimony as to Kashanian's out-of-court statements did not violate the confrontation clause in this case because Kashanian was unavailable and his statements bore adequate indicia of reliability.

D. *Admission of Testimony Regarding Ebtehaj's Conviction.*

■ Nazemian argues that the district court erred in admitting testimony as to the nature of Ebtehaj–Rashti's prior conviction. There were, however, repeated references to the nature of his prior conviction, and to his prior heroin transactions throughout the trial. Most significantly, all defendants stipulated to the admission of Government Exhibit 41, which specifically set out the date and nature of Ebtehaj–Rashti's prior conviction. Having so stipulated, the defendant cannot now complain that she was prejudiced by other testimony on that issue. Even were it error to admit the challenged testimony, it would clearly be harmless.

AFFIRMED.