Filed 7/22/14  P. v. Varnado CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B247622 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA402423) |
| v. | |
| ROBERT VARNADO et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Barbara R. Johnson, Judge.  Affirmed as to Robert Varnado; modified and affirmed as to Ivan Matthews.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant Robert Varnado.

Law Offices of James Koester and James Koester, under appointment by the Court of Appeal, for Defendant and Appellant Ivan Matthews.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez, Rene Judkiewicz and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Robert Varnado and Ivan Matthews appeal from the judgments entered after their respective jury convictions of criminal threats, and assault and attempted criminal threats. Varnado seeks a reversal of his conviction because the court did not instruct the jury to rely on the translation of the court interpreter and did not hold a hearing to determine whether translated out-of-court statements were attributable to Varnado. Matthews contends the prosecution failed to prove the completed prison term element of the prison prior enhancement in Penal Code section 667.5, subdivision (b)[1] and the court should have stricken rather than stayed the punishment for the gang enhancement. We find no prejudicial error and affirm the judgment as to Varnado. We agree that the punishment for Matthews's gang enhancement should have been stricken and modify the judgment as to him accordingly.

## FACTUAL AND PROCEDURAL SUMMARY

Appellants lived near Daphne Cabrera Cortes's family, which included her young son, her mother Nicolasa Cortes,[2] and her husband Patrick Weathers. Cabrera's aunt, Roxana Carmona, and Carmona's son J.M. also lived in the vicinity. In the past, Varnado had threatened to rape Cabrera and had been subject to criminal restraining orders as to her, Carmona, and J.M.

On the evening of September 9, 2012, Cabrera heard appellants talk disrespectfully to her mother, who was in front of the family home with her grandson. When Cabrera confronted appellants, they insulted her and Varnado threatened to slap her. Appellants identified themselves as members of the Broadway gang. Cortes asked J.M. to translate for her because she did not speak English. J.M. translated that Varnado told him to "shut up" and threatened to kill him. When Cabrera picked up her son and tried to go back in the house, Varnado told her, "Bitch, I'm going to kill you, your son,

---

[1] Statutory references are to the Penal Code, unless otherwise indicated.

[2] For clarity, we shall refer to Nicolasa Cortes by her surname, Cortes, and to Daphne Cabrera Cortes by her first surname, Cabrera.

your mom, and your husband." She feared for her own and her family's safety. Police were called. In the 911 call, Cabrera mentioned the restraining orders and the threats to kill her and her son. The officers who arrived at the scene concluded that no crime had been committed and did not take a report or make an arrest.

After the officers left, appellants continued to taunt the family. A fight broke out between Matthews and Weathers, Cabrera's husband, after Matthews announced the Broadway gang name. Weathers did not start the fight, but he did not fear Matthews, and he defended himself. During the fight, Weathers tripped, fell, and cut his lip on a glass bottle, requiring stitches. Encouraged by Varnado, Matthews threatened to get his gun and kill Weathers. Matthews ran to his house and returned holding a black object that resembled a gun. Meanwhile, Weathers had driven off. Cabrera again called 911, this time to report that a man with a gun was going to kill them. Cabrera and her mother gave consistent stories to the officers who arrived at the scene. They claimed Varnado had threatened to kill them, appellants had assaulted Weathers, and Varnado had encouraged Matthews to kill Weathers.

Varnado was charged with criminal threats against Cabrera (count 2) and both appellants were charged with criminal threats (count 3) and assault by means likely to produce great bodily injury (count 4) against Weathers. (§§ 422, subd. (a); 245(a)(4).) Another count was added later, charging appellants with attempted criminal threats against Weathers (count 5). (§§ 422, subd. (a), 664) A gang enhancement was alleged as to counts 2 and 3. As to counts 4 and 5, it was alleged that Matthews had served a prior prison term (§ 667.5, subd. (b).) Count 3 was dismissed, and the remaining three counts renumbered.

The jury convicted Varnado of criminal threats as to Cabrera and acquitted him of felony assault and attempted criminal threats as to Weathers. Matthews was found guilty of felony assault and attempted criminal threats. The court ruled it would strike the punishment on the bifurcated gang allegations if appellants admitted their truth, which they did. The court found the prison prior allegation as to Matthews to be true.

3

Varnado was sentenced to two years in prison and the term for the gang allegation was stricken under section 186.22, subdivision (g). Matthews was sentenced to three years in prison for the assault, a consecutive four-month term for the criminal threats, and a one-year term for the prison prior. The term for the gang allegation was stayed even though the court had earlier stated its intent to strike it.

This timely appeal followed.

## DISCUSSION

### I

Varnado argues the court committed reversible errors in failing to instruct the jury with CALCRIM No. 121 and to hold a hearing to determine J.M.'s proficiency in English. Matthews joins in these arguments to the extent they benefit him.

#### A. *CALCRIM No. 121*

At appellants' trial, Cortes and Carmona testified through an interpreter. During Carmona's testimony, the recording of a 911 call she made in Spanish was played for the jury. The jury was provided with a transcript that included a certified English translation, but the court was under the impression that the transcript could not be used without live interpretation because the jurors would not know when to turn the page. The court told the jury to listen only "for the emotion, not for the language" and told the prosecutor the jurors "don't need to read [the transcript] because it's not being translated." Later on, the transcript was admitted into evidence.

Varnado argues that by allowing the jury to disregard the English translation of the recorded 911 call and by failing to instruct the jury with CALCRIM No. 121, the court implied the jury was free to disregard the English interpretation of Cortes's and Carmona's testimony.

CALCRIM No. 121 instructs jurors that they must rely on the court interpreter's English translation of foreign language testimony, even if they understand the language spoken by the witness. The bench note recommends giving this instruction whenever a witness testifies through an interpreter, even though no case has held that the court has a

4

sua sponte duty to give it. (Judicial Council of Cal. Crim. Jury Instns. (2014) Bench Notes to CALCRIM No. 121, p. 20.) In 2014, CALCRIM No. 121 was revised to include an alternative instruction for foreign language recordings, which requires jurors to rely on the transcript of the English language translation of the recording. Before the revision, the bench notes recommended using a similar Ninth Circuit model jury instruction in that situation. (Ninth Circuit Manual of Model Criminal Jury Instructions (2010) Criminal Cases, Jury Instruction No. 2.8 [requiring jurors to accept transcript of official English-language translation of recording]; Judicial Council of Cal. Crim. Jury Instns. (2012) Bench Notes to CALCRIM No. 121, p. 22.)

By instructing bilingual jurors not to rely on their own understanding of a witness's testimony or a recording if they disagree with the certified translation, CALCRIM No. 121 ensures that a defendant is convicted only on evidence presented at trial. (See *People v. Cabrera* (1991) 230 Cal.App.3d 300, 303–304 [juror committed misconduct in relying on and sharing her own translation of testimony with other jurors]; see also *U.S. v. Fuentes–Montijo* (9th Cir. 1995) 68 F.3d 352, 355–356 [restrictions on bilingual jurors may be "essential" where translation is disputed].)

An instructional error affecting a defendant's right to a jury verdict based on the evidence is reviewable on appeal even absent an objection in the trial court. (See *People v. Hernandez* (2009) 180 Cal.App.4th 337, 348, quoting § 1259 [instructional error not forfeited where it affects defendant's substantial rights].) We review claims of instructional error de novo. (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.) We consider the instructions as a whole, and interpret them "'so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*Id*. at p. 1112.)

The court's ruling that the certified English translation in the transcript of the recorded 911 call was not evidence without live in-court interpretation of the recording was not correct, especially since the transcript was later admitted into evidence. But Varnado's argument that the court in effect encouraged the jury to disregard the in-court interpretation of Cortes's and Carmona's testimony is not well taken. To the contrary,

5

the court emphasized the importance of in-court interpretation by telling the jury that the recording "has to be interpreted in English for you to accept it as evidence in this case."

Even assuming CALCRIM No. 121 should have been given under the circumstances, Varnado and Matthews were not deprived of the right to a jury verdict based on the evidence. The claim that the failure to give CALCRIM No. 121 made possible Varnado's, or Matthews's, conviction based on Cortes's Spanish-language testimony is speculative and not supported by the record. The accuracy of the in-court interpretation of trial testimony is not disputed, and as the prosecutor pointed out in closing, the testimony of Cortes and Carmona was cumulative of Cabrera's testimony in English. (See *People v. Cabrera*, *supra*, 230 Cal.App.3d at p. 304 [no prejudice where discrepancy in translation irrelevant to issues in case].)

The failure to give the CALCRIM No. 121 instruction does not require reversal of appellants' convictions.

### B. Translated Out-of-Court Statements

Over objection, Cortes was allowed to testify about her nephew J.M.'s translation of Varnado's contemporaneous threat to kill J.M. and about J.M.'s claim that Carmona had told him about Varnado's threat to kill her. The court concluded Varnado's threats were party admissions, and J.M.'s translation was not "the issue" because the accuracy of his translation went to its weight, not its admissibility. Varnado argues the court misunderstood the "language conduit theory," which requires an inquiry into the qualifications and language skill of a translator of out-of-court statements.

In *Correa v. Superior Court* (2002) 27 Cal.4th 444, 457 (*Correa*), the court explained that the "language-conduit theory calls for a case-by-case determination whether, under the particular circumstances of the case, the translated statement fairly may be considered to be that of the original speaker." The court adopted the Ninth Circuit's approach in *U.S. v. Nazemian* (9th Cir. 1991) 948 F.2d 522, 527 (*Nazemian*). That approach includes consideration of several factors, "such as which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the

6

interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated." (*Correa*, at p. 458.)

Varnado's argument is limited to one of these factors—the interpreter's language skill. He argues that without a hearing to determine J.M.'s proficiency in English, the language conduit theory did not apply. In *Correa*, *supra*, 27 Cal.4th 444, the court noted that interpreters do not always testify in language conduit theory cases, but "where the particular facts of a case cast significant doubt upon the accuracy of a translated [statement], the translator or a witness who heard and understood the untranslated [statement] must be available for testimony and cross-examination at the . . . hearing before the [statement] can be admitted." (*Id.* at p. 459, quoting *U.S. v. Martinez-Gaytan* (5th Cir. 2000) 213 F.3d 890, 891.)

J.M. did not testify at trial, but over objection based on lack of foundation, Cortes was allowed to testify that her nephew was fluent in Spanish and English. Varnado argues this testimony was unreliable because Cortes herself did not speak English. Evidence of language proficiency may be circumstantial. (See *Nazemian*, *supra*, 948 F.2d 522, 548 [although no evidence of translator's language skills, they were considered satisfactory over several meetings].) Here, Cortes specifically called 14-year-old J.M. to translate, and both she and Carmona relied on his translation of what was not a linguistically challenging conversation. The circumstances do not cast significant doubt on J.M.'s ability to translate.

Even assuming J.M.'s statements were not admissible under the language conduit theory, their admission was harmless error. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) The statements did not implicate Matthews, and they were not relevant to whether Varnado made criminal threats against Cabrera. Cabrera's own testimony was sufficient evidence of Varnado's threats against her. It was corroborated not only by her mother's testimony, but also by Cabrera's first 911 call, during which she complained about the threats. To undermine Cabrera's testimony, Varnado relies on the testimony of one of the officers who responded to that call and who claimed none of the women mentioned any

7

threats. But the officer acknowledged he was unaware that the person who called the police already had reported the threats.

We find no reversible error.

## II

Matthews challenges his sentence on two grounds: that the prosecution failed to prove the completed prison term element of section 667.5, subdivision (b), and that the court improperly stayed, instead of striking, the punishment for the gang enhancement under section 186.22, subdivision (g).

### A. Section 667.5, subdivision (b)

A sentence enhancement under section 667.5, subdivision (b) requires the prosecution to prove beyond a reasonable doubt that the defendant: "(1) was previously convicted of a felony; (2) was imprisoned as a result of that conviction; (3) completed that term of imprisonment; and (4) did not remain free for five years of both prison custody and the commission of a new offense resulting in a felony conviction." (*People v. Tenner* (1993) 6 Cal.4th 559, 563, 568 (*Tenner*).) We review the record for substantial evidence, and in the light most favorable to the judgment. (*Id*. at p. 567.)

The records of a penal institution, although preferable, are not the only evidence that a defendant served a prior prison term. (*Tenner*, *supra*, 6 Cal.4th at pp. 563, 567.) "The admission into evidence of an abstract of judgment and commitment form, considered in light of the official duty presumption (Evid. Code, § 664), supports an inference that the official into whose custody defendant was placed upon imposition of sentence regularly performed his or her duty to convey the defendant to prison (Pen. Code, § 1216). It is likewise reasonable to infer that prison officials regularly performed their duty to see that defendant's sentence was carried out. These reasonable inferences, together with evidence indicating that defendant was out of custody when he committed the later offense, support a finding that defendant completed a prior prison term." (*Tenner*, at p. 566.)

Matthews seeks to distinguish *Tenner* on the ground that, here, the prosecution did not introduce an abstract of judgment and commitment form, but rather a certified court

8

docket including a minute order that shows Matthews' 2009 felony conviction and sentence to 16 months in prison. The minute order states, "FORTHWITH COMMITMENT ISSUED," indicating that a commitment order or abstract of judgment was issued. (See § 1213; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [certified abstract of judgment constitutes commitment order, which must be issued "forthwith" to officer whose duty it is to execute judgment].) The fact that Matthews was committed is substantial evidence that the duty to deliver him to prison had been triggered. Matthews was free to rebut the presumption that official duty had been regularly performed. (See *Tenner*, *supra*, 6 Cal.4th at p. 566.) He did not. Matthews disagrees with the holding of the Supreme Court in *Tenner* that it is reasonable to infer a prison sentence was completed once a defendant was delivered to prison. That holding is, of course, binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

*B. Section 186.22, subdivision (g)*

Matthews argues the court apparently misspoke when it stated that it was staying the sentence on the gang enhancement in section 186.22, subdivision (b)(1)(B), under subdivision (g). That provision allows the court to strike the punishment in the interest of justice. Respondent concedes the trial court was required to either impose or strike the punishment, but maintains the case must be remanded so the trial court may exercise its discretion.

The record is clear that the trial court had agreed to and repeatedly expressed its intent to strike the punishment for the gang enhancement, as allowed under section 186.22, subdivision (g), if appellants admitted the gang allegations. In Varnado's case, the court initially stated the punishment was stayed, then said it was stricken. It is reasonable to conclude the court similarly misspoke when it purported to stay the same punishment in Matthews's case. A remand is unnecessary under these circumstances. Instead, we modify the judgment to strike Matthews's punishment for the gang enhancement. (See § 1260 [appellate court "may . . . modify a judgment or order"].)

Matthews's abstract of judgment should be corrected to reflect that the punishment under section 186.22, subdivision (b)(1)(B) was stricken, not stayed. As respondent

9

notes, Varnado's abstract of judgment also should be corrected to reflect the stricken punishment.

## DISPOSITION

The judgment is affirmed as to Varnado. As to Matthews, the judgment is modified to strike the punishment for the gang enhancement under section 186.22, subdivision (b)(1)(B), pursuant to subdivision (g), and is otherwise affirmed. Appellants' abstracts of judgment must be amended to reflect this stricken punishment and forwarded to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


EDMON, J.

10