Filed 10/8/20  P. v. Navarro CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANTONIO NAVARRO, <br><br> Defendant and Appellant. | B296251 <br><br> Los Angeles County <br> Super. Ct. No. BA457180 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge. Affirmed.

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted appellant and defendant Antonio Navarro of one count of first degree murder of Uziel Sandoval, two counts of possession of a firearm by a convicted felon, and one count of shooting at an occupied motor vehicle. On appeal, Navarro argues the trial court erred by admitting into evidence the audio recordings of a witness's two interviews with police conducted in Spanish, as well as the transcripts of the recordings. The transcripts contained Spanish transcriptions of the interviews and English translations. Navarro contends: (1) the admission of the transcripts' English translations violated his rights under the Confrontation Clause pursuant to *Crawford v. Washington* (2004) 541 U.S. 36 [125 S.Ct. 1354, 158 L.Ed.2d 177] (*Crawford*) and its progeny[1]; and (2) the court abused its discretion under Evidence Code section 352 when it allowed the prosecution to play the recordings for the jury and provided them with the transcripts. The Attorney General responds Navarro has forfeited his claims on appeal because he did not object on these grounds at trial.

We agree with the Attorney General and conclude Navarro forfeited the claims of error raised in this appeal. Accordingly, the judgment is affirmed.

---

[1] Under *Crawford*, "[w]here a hearsay statement is 'testimonial,' the confrontation clause bars the prosecution from using it against a criminal defendant unless the declarant is available to testify at trial, or the defendant had a previous opportunity to cross-examine the declarant." (*People v. Sisavath* (2004) 118 Cal.App.4th 1396, 1401 [citing *Crawford*, *supra*, 541 U.S. at pp. 49-57].) In this case, Navarro contends the *translator* is the "declarant" and the translator was not present at trial for cross-examination.

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Navarro with one count of first degree murder (Pen. Code, § 187, subd. (a)[2]; count one), two counts of possession of a firearm by a convicted felon (§ 29800, subd. (a)(1); counts two and four), and one count of shooting at an occupied motor vehicle (§ 246; count three). The information alleged a principal personally discharged a firearm causing death in the commission of counts one and three, (§ 12022.53, subds. (d) & (e)(1)), discharged a firearm (§ 12022.53, subds. (c) & (e)(1)), and used a firearm (§ 12022.53, subds. (b) & (e)(1)). The information further alleged Navarro committed the crimes for the benefit of a criminal street gang with intent to promote gang members' criminal conduct (§ 186.22, subds. (b)(1)(A) & (C)), and Navarro sustained two prior prison term convictions. (§ 667.5, subd. (b)).

Navarro admitted the allegations regarding his prior felony and prison term convictions, and the jury found Navarro guilty on all counts. The jury found true the street gang allegations on counts one, two, and three. On count one, the jury found true all three firearm allegations. On count three, however, the jury found true only the allegations that a principal discharged and used a firearm in the commission of the offense.

The court sentenced Navarro to a total term of seven years and eight months plus 50 years to life in state prison, consisting of: (1) a term of 25 years to life with an additional consecutive term of 25 years to life due to a principal's discharge of a firearm causing death, for a total of 50 years to life, on count one; (2) a

_____

[2] All undesignated statutory references are to the Penal Code.

two-year middle term with a three-year street gang enhancement, for a total of five years, on count two; (3) a term of eight months (one-third the mid-term of two years) on count four; and (4) two one-year terms based on Navarro's prior convictions.[3]

Navarro timely appealed.

## FACTUAL BACKGROUND

In the late afternoon of November 23, 2016, Sandoval was driving from Monterey Park to South Gate in his truck with a friend. They passed through the intersection of Whittier Boulevard and Alma Street in East Los Angeles where the Bartolo bar is located. The area around the intersection is claimed by a street gang known as the Laguna Park Vikings. Video surveillance footage was recovered from the Bartolo bar. The footage shows Navarro inside the bar on that date with a large and heavy black object in his front right pocket.

As Sandoval and his friend were passing by the Bartolo bar, they stopped the truck, exited the vehicle, and got into a fight with several individuals outside the bar. Sandoval ran back to his truck, got into the driver's seat, and started driving away. As the truck was turning the corner, a bartender working at the bar saw Navarro take a gun out from his waist, yell "'Laguna Park'" and fire two shots at the truck. Thirty seconds later, the bartender heard two more gunshots fired by an unknown person.

---

[3]     With respect to count one, the court also imposed and stayed two additional firearm enhancements and a street gang enhancement. Additionally, the court imposed and stayed a life term with a minimum of 15 years along with two firearm enhancements on count three.

The truck crashed into a tree on Alma Street, just north of Whittier Boulevard.

Upon arrival at the crash site, police found Sandoval dead in the driver's seat of the truck. He was killed by a single gunshot wound to the chest. The bullet that killed him was fired by a nine-millimeter gun. Police found a .45 caliber bullet casing next to the driver-side door of a white van parked nearby and recovered a bullet from the truck's dashboard.

Later that evening, the police interviewed the bartender at the police station. The interview was conducted in Spanish and recorded. The bartender related what she observed during the fight outside the bar. She identified Navarro as a member of the Laguna Park Vikings known as "Psycho." She also picked Navarro out of a photographic line-up as the individual who fired two gunshots at Sandoval's truck.

The police again interviewed the bartender at her home in Spanish on January 25, 2017. During the second interview, which also was recorded, the bartender told police Navarro had visited her home and asked her about what she had previously told them. The police informed the bartender that Navarro was going to be prosecuted for Sandoval's murder. They offered to help her and her family move to a different home for their safety.

Police searched Navarro's residence on February 28, 2017. They found a loaded .45 caliber semi-automatic pistol with a black handle in his bedroom. Ballistics tests revealed the pistol fired the casing found next to the white van parked near the crash site. Due to the damage to the bullet recovered from the truck's dashboard, ballistics tests could only confirm it "was consistent with bullets loaded in .45 auto caliber cartridges."

## DISCUSSION

At trial, the bartender professed not to recall details of the incident or what she had said about it during her interviews with police. She also stated she felt "pressured" to answer police questions. The prosecution confronted the witness using the recordings, the Spanish language transcriptions, and the English translations of her police interviews. Navarro contends this constituted error. In support of his position, Navarro advances two arguments. First, he argues the admission of the transcripts' English translations violated his rights under the Confrontation Clause pursuant to *Crawford, supra,* 541 U.S. 36, and its progeny, because the translations constituted testimonial hearsay statements by the translator, who Navarro complains he did not have the opportunity to cross-examine. Second, Navarro argues the court abused its discretion under Evidence Code section 352 by admitting the interview recordings, transcripts, and translations.

The Attorney General responds Navarro forfeited these claims on appeal by failing to raise them at trial as evidentiary objections or in any other fashion. We agree with the Attorney General.

In general, ""questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal."' [Citations]." (*People v. Alvarez* (1996) 14 Cal.4th 155, 186 (*Alvarez*); Evid. Code, § 353, subd. (a).) "'The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible

prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' [Citation.]" (*People v. Partida* (2005) 37 Cal.4th 428, 434.)

At trial, the bartender testified she did not remember telling the police she saw Navarro fire two shots at Sandoval's truck while yelling "'Laguna Park . . . .'" In response, the prosecution informed the trial court they intended to "confront" the bartender with the recording of her first interview, along with the transcript thereof. Relying on an unidentified "de-published case," the trial court stated it would not admit the interview recording or transcript because "[t]he case held that it was structural error for a court to allow the jurors to translate themselves the Spanish language audio of the witness's interview." Instead, the court stated it would permit the prosecution to play the recording for the bartender outside the jury's presence. If the bartender maintained she did not make certain statements to the police, the prosecution could call "a witness who was present to testify as to the contents strictly in English." Alternatively, the court would allow the prosecution to call the translator to provide a certified translation of the bartender's interview.

Before the prosecution could confront the bartender with the recording, however, she testified she felt "pressured" to answer the police's questions during the interviews. Based on this testimony, the trial court reversed its ruling in light of *People v. Mora and Rangel* (2018) 5 Cal.5th 442 (*Mora and Rangel*). In response, defense counsel argued *Mora and Rangel* was inapplicable. The trial court rejected defense counsel's argument. Thereafter, the court allowed the prosecution to play the

recordings of the bartender's two police interviews for the jury. The trial court also allowed the prosecution to distribute the transcripts containing both the Spanish transcription and the English translation to the jury.

The record thus reflects defense counsel did not object to the prosecution's use of the recordings and transcripts of the bartender's police interviews based on the Confrontation Clause or Evidence Code section 352. Accordingly, we conclude the claims Navarro raises on appeal have been forfeited. (*Alvarez*, *supra*, 14 Cal.4th at p. 186; Evid. Code, § 353, subd. (a).)

In addition, we reject Navarro's argument that he did not forfeit his Confrontation Clause claim because an objection to the translated transcripts on that ground would have been futile under *Correa v. Superior Court* (2002) 27 Cal.4th 444 (*Correa*).[4] As discussed below, *Correa* would not necessarily have required the trial court to overrule a Confrontation Clause objection to the English translations of the bartender's statements, as Navarro suggests.

In *Correa*, our Supreme Court adopted the "language-conduit theory," holding that "if a contemporaneously translated statement fairly may be attributed to the declarant under the particular circumstances of the case . . . the translation does not add a layer of hearsay." (*Correa*, *supra*, 27 Cal.4th at pp. 457, 463.) Relying on the Ninth Circuit's decision in *United States v. Nazemian* (9th Cir. 1991) 948 F.2d 522 (*Nazemian*), the *Correa* court held trial courts must decide whether a translated statement may be fairly considered a statement by the original

---

[4] In his Reply Brief, Navarro does not dispute his Evidence Code section 352 claim has been forfeited.

declarant on a case-by-case basis, by considering a number of factors, "'such as which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated.' [Citation.]" (*Id.* at pp. 457-458.)

Courts applying the same analysis embraced in *Correa* have arrived at different conclusions based on the specific facts presented in each case. (See, e.g., *United States v. Orm Hieng* (9th Cir. 2012) 679 F.3d 1131, 1138-1139 (*Hieng*) [applying multi-factor language-conduit theory test to conclude translated statements by the defendant in an interview with FBI agents were properly attributed to him, and therefore the Confrontation Clause was not implicated]; *United States v. Gutierrez-Salinas* (9th Cir. 2016) 640 Fed.Appx. 690, 692-693, cert. den. (2016) 136 S. Ct. 2528 [195 L.Ed.2d 855] [applying multi-factor language-conduit theory test to conclude a form affidavit written in English and signed by a Spanish-speaking defendant could not be fairly attributed to the defendant and was therefore a separate hearsay statement by the form's author, and further concluding admission of the form violated the Confrontation Clause because it was testimonial in nature and the defendant had no opportunity to cross-examine its author].) Accordingly, we are not persuaded that a Confrontation Clause objection to the translated transcripts necessarily would have been futile under *Correa*.

Navarro also argues the translations of the bartender's statements should be considered hearsay statements by the translator because *Correa*'s language-conduit theory test "no longer survives" post-*Crawford*. According to Navarro, *Nazemian*,

9

*supra*, 948 F.2d 522, the case from which the *Correa* court adopted its multi-factor test, is irreconcilable with *Crawford*. (See, e.g., *United States v. Charles* (11th Cir. 2013) 722 F.3d 1319, 1327-1329 [rejecting the language-conduit theory in light of *Crawford* and its progeny and concluding admission of a Creole-speaking defendant's translated statements made in an interrogation by a Customs and Border Protection officer violated the Confrontation Clause because the defendant did not have an opportunity to cross-examine the interpreter].)[5] Because Navarro failed to raise this argument at trial, it has also been forfeited. (See *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 [appellate courts generally will not consider arguments raised for the first time on appeal].)

Moreover, even if we chose to address Navarro's Confrontation Clause claim on the merits, we would be unable to resolve it in an intelligible manner because the record was not adequately developed at trial. As noted, defense counsel did not object to the translated transcripts of the bartender's interviews on Confrontation Clause grounds. No evidence or arguments were presented on whether the translated statements fell within the language-conduit theory under the *Correa* test.[6] And neither the

---

[5]     In contrast with the Eleventh Circuit, the Ninth and Fifth Circuits have held the language-conduit theory remains valid and can still apply in the wake of *Crawford* and its progeny. (*Hieng, supra*, 679 F.3d 1131, 1138-1141; *United States v. Budha* (5th Cir. 2012) 495 Fed.Appx. 452, 454.) Additionally, the Fourth Circuit has continued to apply the language-conduit theory post-*Crawford*. (See, e.g., *United States v. Vidacak* (4th Cir. 2009) 553 F.3d 344, 352.)

[6]     The Attorney General suggests the language-conduit theory should apply here because the English translations of the

10

prosecution nor Navarro offered evidence or argument at trial about whether the translations were "testimonial" within the meaning of *Crawford* and its progeny. The lack of information essential to resolving Navarro's Confrontation Clause claim further supports our conclusion that the claim has been forfeited, and may not be considered for the first time on appeal.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.

---

transcripts were prepared by a "court-certified translator." So far as we can tell, however, the record reflects the name of the translation service, but does not indicate whether the translator was court-certified. Indeed, although the parties (and therefore we) refer to the English language version of the interviews as a translation, the record does not reveal whether it was based on the recording or its Spanish language transcription.

11