REILLY, Judge
In this direct appeal from final judgment of conviction and sentence for first-degree criminal sexual conduct (CSC), appellant Cesar Rosario Lopez-Ramos argues that his rights under the Confrontation Clause were violated when an interpreter who translated his foreign-language statements during a police interrogation was not present to testify at trial and the translated statements were admitted into evidence through a video recording and an officer's testimony. Lopez-Ramos also challenges *699 the admission of his translated statements on hearsay grounds. Because the district court did not err in its determination that the interpreter in this case acted as a "language conduit" and was not a declarant, and therefore no Confrontation Clause or hearsay issues exist, we affirm.
FACTS
In May 2016, the state charged Lopez-Ramos with one count of first-degree CSC alleging that he engaged in sexual penetration with a minor under 13 years of age in April 2016. Lopez-Ramos is from Guatemala and he immigrated to the United States in 2016. His first language is Mam, Spanish is his second language, and he does not speak English fluently.
In April 2016, Nobles County child protection received a report expressing concern about a 12-year-old child due to "hickeys" on her neck. Child protection contacted police and Worthington Police Officer Daniel Brouillet began investigating. Brouillet spoke to the child's parents, who said that they suspected Lopez-Ramos.
On May 10, Officer Brouillet located Lopez-Ramos, who agreed to give a statement to police. Police brought Lopez-Ramos to an interview room, and they recorded the entire interrogation on video. At the beginning of the interrogation, Brouillet telephoned a foreign-language interpretation service for a Spanish interpreter. The interpreter was placed on speaker phone, and he translated the officer's questions from English to Spanish and then translated Lopez-Ramos's statements back to the officer from Spanish to English.
During the interrogation Lopez-Ramos admitted that he had sexual intercourse with the child in this case:
OFFICER BROUILLET (OB): So a couple months ago, maybe a month ago, there was some talk between [the child's] dad ... and you about something that happened between you and [the child]. Can you explain that?
LOPEZ-RAMOS BY INTERPRETER (LR/I): Uh-huh.
OB: Do you know what incident I'm talking about?
LR/I: Yes.
OB: Okay. Can you explain?
LR/I: Everything that happened was because she wanted to. That's not, things didn't happen the way she is telling. Everything that happened is because she wanted to, not the way she is telling it.
OB: Okay, so tell me what happened in your, what was she doing? This is your time to explain your side of the story. LR/I: I got home from work. She got home from school. She started playing jokes, or you could say she started kidding me. Um, then I told her to stop making jokes or kidding me and then she ... told me to get into a little room and, um, after that well, I said I did not want to disturb anyone. After that I don't remember well what happened. I don't remember how things happened after that.
OB: Okay. Well, what happened?
LR/I: We had intercourse with her.
OB: Okay. And how long ago was this?
LR/I: Just now about a month ago.
OB: Okay. And how many times did you have intercourse with [the child]?
LR/I: Just that one time. Nothing else.
OB: Okay. Did you use a condom?
LR/I: No. Why should I lie?
OB: Okay. Did you, uh, did you ejaculate?
[Interpretation, then pause].
*700 OB: Did you come? Did semen come out of you?
LR/I: Yes.[1]
Lopez-Ramos was arrested and charged. He pleaded not guilty and took his case to a jury trial. Before trial, Lopez-Ramos objected to the recording of his translated statement to police being played to the jury on Confrontation Clause and hearsay grounds because the interpreter was not present to testify. The prosecutor stated that the interpreter was probably at a call center and not in Nobles County.
The district court ruled that Officer Brouillet's testimony regarding the translated statements and the video recording of Lopez-Ramos's interrogation were both admissible and did not present Confrontation Clause or hearsay issues. Relying on a Ninth Circuit Court of Appeals case, United States v. Nazemian , 948 F.2d 522, 527 (9th Cir. 1991), the district court examined a set of factors to determine whether the interpreter's statements "fairly should be considered the statement of the speaker." The district court concluded that the interpreter was a "language conduit" or an agent of Lopez-Ramos, and it treated the translated statements in English as Lopez-Ramos's own statements.
The video recording of Lopez-Ramos's interrogation was played for the jury and Officer Brouillet testified at trial that Lopez-Ramos told him that he (Lopez-Ramos) had "intercourse" with the child.
The child testified at trial that Lopez-Ramos pulled down her pants and underwear and placed his penis inside of her vagina. She stated that she felt pain when his penis was inside her vagina. On several occasions when asked difficult questions about what had occurred, the child had no response and the prosecutor reframed or repeated the question.
Lopez-Ramos testified and denied having any sexual contact with the child. He stated that he did not understand "why [Officer Brouillet] was asking questions" about the child. Lopez-Ramos said that he did not remember talking to Brouillet about an "incident" with the child or telling Brouillet that he had intercourse with the child because during the interrogation he was still intoxicated from a party the night before. He claimed that when he spoke to Brouillet he was "not within [his] five senses" and was "being asked question[s] that [he] was not understanding." Lopez-Ramos also claimed that he did not fully understand the interpreter because his native language is Mam. He testified, "In that video I had said that I had done things that I hadn't done."
On cross-examination, Lopez-Ramos admitted that he understood Brouillet's questions translated into Spanish regarding his date of birth, where he had lived, and his family and work history. When pressed on why he could successfully communicate on some topics but not on the topic of sexual contact with the child, Lopez-Ramos stated: "I didn't know exactly what [Officer Brouillet] was talking about.... I had no idea why he was asking me those questions. He didn't explain it."
In its closing argument, the state stressed that Lopez-Ramos's own words in his statement to police were the strongest evidence that sexual penetration occurred. On December 15, 2016, the jury found Lopez-Ramos guilty of first-degree CSC.
*701 The district court sentenced Lopez-Ramos to 144 months in prison.
Lopez-Ramos now appeals.
ISSUES
I. Was Lopez-Ramos's Sixth Amendment right to confront witnesses against him violated when the district court admitted into evidence his translated statements in a video recording of his interrogation and by way of Officer Brouillet's testimony, and when the interpreter was not available for cross-examination?
II. Did the district court abuse its discretion by admitting into evidence Lopez-Ramos's translated statements over his hearsay objection?
ANALYSIS
Lopez-Ramos argues that the district court deprived him of his Sixth Amendment right to confront witnesses against him when it allowed his translated statements into evidence through a video recording and Officer Brouillet's testimony and the interpreter was not available for cross-examination. He also argues the interpreter's statements constitute inadmissible hearsay.
Generally, appellate courts review a district court's evidentiary ruling for an abuse of discretion. Miles v. State , 840 N.W.2d 195, 204 (Minn. 2013). But, whether admission of evidence violates a criminal defendant's rights under the Confrontation Clause is a question of law that appellate courts review de novo. Hawes v. State , 826 N.W.2d 775, 786 (Minn. 2013). A district court's factual findings are reviewed for clear error. State v. Horst , 880 N.W.2d 24, 33 (Minn. 2016).
I. Confrontation Clause
The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions "the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment is applicable to the states via the Fourteenth Amendment. Pointer v. Texas , 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The Confrontation Clause bars the admission of testimonial out-of-court statements unless (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant. Andersen v. State , 830 N.W.2d 1, 9 (Minn. 2013) (citing Crawford v. Washington , 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) ).
In Crawford , the Supreme Court determined that the principal evil at which the Confrontation Clause was directed was the use of "ex parte examinations as evidence against the accused." 541 U.S. at 50, 124 S.Ct. at 1363. The Clause applies to those witnesses, in or out of court, who "bear testimony" against the accused. Id . at 51, 124 S.Ct. at 1364. "Testimony" means a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id . Without fully defining the word "testimonial," the Crawford court noted that included within a "core class" of "testimonial" statements were:
ex parte in-court testimony or its functional equivalent that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially ... ; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[; and] statements that were made under circumstances which would lead an objective witness reasonably to believe that *702 the statement would be available for use at a later trial.
Id. at 51-52, 124 S. Ct. at 1364 (quotations omitted).
In overruling Ohio v. Roberts , 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Crawford court determined that when testimonial statements are involved, the "vagaries of the rules of evidence," and "amorphous notions of reliability" should not be determinative of whether a statement is subject to confrontation. Id . at 61, 64, 124 S. Ct. at 1370-71. This is because the Confrontation Clause is a procedural right and commands "not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Id . at 61, 124 S.Ct. at 1370.
A. The threshold issue is the identity of the declarant.
Lopez-Ramos argues that the interpreter's statements to law enforcement during his interrogation were testimonial and therefore his Confrontation Clause rights were violated when the interpreter's statements were admitted into evidence without the interpreter being available for cross-examination. The state argues that the Confrontation Clause is not implicated here because the interpreter was acting as a "language conduit" and Lopez-Ramos, not the interpreter, was the declarant of his out-of-court statements.
We agree with the state that the threshold issue for both the Confrontation Clause and hearsay issues in this case is whether the interpreter is the declarant. Unlike most cases involving a Confrontation Clause or hearsay challenge, the identity of the declarant is not obvious when an interpreter translates a foreign language speaker's statements into English. United States v. Charles , 722 F.3d 1319, 1332 (11th Cir. 2013) (Marcus, J., specially concurring). As explained by the Ninth Circuit Court of Appeals in United States v. Orm Hieng , the identity of the declarant may dictate the result in such a case:
If a court were to hold that the statement must be attributed to the interpreter, it would, under Crawford , ask whether the statement, as applied to the interpreter, was testimonial. If so, the statement could not be admitted without opportunity for confrontation of the interpreter. But if the court determines that a statement may be fairly attributed directly to the original speaker, then the court would engage in the Crawford analysis only with respect to that original speaker. Where ... that speaker is the defendant, the Sixth Amendment simply has no application because a defendant cannot complain that he was denied the opportunity to confront himself.
679 F.3d 1131, 1140 (9th Cir. 2012) ; see also State v. Goodridge , 352 N.W.2d 384, 388 n.2 (Minn. 1984) ("[A] party cannot object to his failure to have a chance to cross-examine himself.").
Therefore, for Lopez-Ramos to succeed in his Confrontation Clause challenge he must show that (1) the interpreter was a declarant, (2) the declarant's statements were testimonial and admitted for the truth of the matter asserted, and (3) Lopez-Ramos was unable to cross-examine the declarant. See Andersen , 830 N.W.2d at 9 (discussing the elements of a successful Confrontation Clause challenge).
The question of whether an interpreter translating a foreign-language speaker's statements into English is a declarant for the purposes of a Confrontation Clause analysis, appears to be an issue of first impression in Minnesota. To answer this question, we first examine Minnesota caselaw on hearsay and interpreted statements, *703 and then turn to foreign authorities that also address the question.
i. Minnesota law on hearsay and interpreted statements
Two Minnesota cases address challenges to interpreters' statements on hearsay grounds. In Miller v. Lathrop -a 1892 Minnesota Supreme Court case involving a civil action to recover possession of certain personal property-the plaintiff, who spoke only Polish, made admissions to one of the defendants by way of her daughter translating from Polish to English. 50 Minn. 91, 93, 52 N.W. 274, 274 (1892). The supreme court concluded that the defendant's testimony as to the conversation between him and the plaintiff was admissible because "[t]he rendering in English by the daughter to [the defendant] of what her mother said in Polish was not in the nature of hearsay." Id . The supreme court determined:
When two persons voluntarily agree upon a third to act as interpreter between them, the latter is to be regarded as the agent of each to translate and communicate what he says to the other, so that such other has a right to rely on the communication so made to him. It is the communication of the party through his agent.
Id .
A similar issue was addressed in State v. Mitjans , when a defendant made admissions in Spanish to a Spanish-speaking police officer, who acted as an interpreter to facilitate communication between the defendant and another officer. 408 N.W.2d 824, 826-27 (Minn. 1987). The defendant challenged the admission of the statements on hearsay grounds. Id . at 830-31. The supreme court ruled that the defendant's statements translated through the officer were admissible under Minn. R. Evid 801(d)(2)[2] because the officer was present in court, under oath, and subject to cross-examination. Id. at 830. In dicta, the supreme court noted that it "would have a difficult hearsay issue to resolve" had the translating officer not been present to testify at trial, and it noted that
[t]he issue would be a hearsay issue because the other officer, who speaks only English, could testify only to what [the translating officer] said defendant had said. Some courts have reasoned that the interpreter normally may be viewed as an agent of the defendant and that therefore the translation is attributable to the defendant as his own admission and is admissible under rule 801(d)(2). We express no opinion on this issue but point out that under the agency theory of admissibility the case for admission of the defendant's statements in a criminal prosecution is certainly stronger if the interpreter on whose interpretation the witness relies is the defendant's own interpreter or an independent interpreter appointed to assist the defendant rather than one employed as a police officer.
Id. at 830-31 (quotation omitted).
The state asserts that the reasoning in Miller leads to a conclusion that Lopez-Ramos was the declarant in this case. Lopez-Ramos points to the language Mitjans -that the English-speaking officer "could testify only to what [the Spanish-speaking officer] said defendant had said"-as demonstrating the complex nature of language interpretation, which in turn supports the conclusion that the interpreter here was a declarant.
*704 However, we do not believe that Miller or Mitjans are controlling here. It is unclear from Miller whether we should treat (1) the interpreter as a declarant, but whose statements are nevertheless admissible under what later became Minn. R. Evid. 801(d)(2)(D), which excludes statements made by a party's agent from the definition of hearsay, or (2) the foreign-language speaker as the sole declarant. Furthermore, rather than clarify this issue, the supreme court in Mitjans declined to express an opinion on whether an interpreter's translation is "attributable to the defendant as his own admission." 408 N.W.2d at 830. While the court in Mitjans hinted that the interpreter's statements may be admissible nonhearsay under an agency theory, like in Miller , it is unclear whether this means an interpreter should be treated as an independent declarant as the speaker's agent, or whether the foreign-language speaker would be the sole declarant.[3]
In short, Minnesota law provides no satisfactory answers.
ii. Foreign authority
For its assertion that Lopez-Ramos was the sole declarant in this case, the state relies on two Ninth Circuit Court of Appeals cases, Nazemian , 948 F.2d at 525-26, and Orm Hieng , 679 F.3d at 1140.
In Nazemian , the Ninth Circuit held that under certain circumstances a witness may testify regarding statements made by a defendant through an interpreter without raising Confrontation Clause or hearsay issues if the statements are properly viewed as the defendant's own. 948 F.2d at 528. In that case a Farsi-speaking defendant was indicted for a drug-distribution conspiracy. Id . at 524. She argued on appeal that her Confrontation Clause rights were violated when a government agent testified about her statements, which the agent only heard translated through an interpreter. Id . The Nazemian court treated the issue of "whether the interpreter or Nazemian should be viewed as the declarant" as a threshold matter, and addressed it before examining the now defunct pre- Crawford factors in Roberts on "indicia of reliability." Id . at 525, 532.
The court in Nazemian noted that other federal circuit courts of appeal take the view that an interpreter under "some circumstances [should] be viewed as an agent of the defendant, and the translation hence be attributable to the defendant as her own admission." Id . at 526 (citing United States v. Da Silva , 725 F.2d 828, 831-32 (2d Cir. 1983) (holding that when agency relationship between speaker and interpreter may properly be found to exist, interpreter becomes no more than a "language conduit" and the "testimonial identity between declarant and translator brings the declarant's admissions within Rule 801(d)(2)(C) or (D)") (other citations omitted)). In other federal cases addressing this issue, no hearsay problem existed because *705 the court determined that the interpreter acted merely as a "language conduit." Nazemian , 948 F.2d at 526 (citing United States v. Koskerides , 877 F.2d 1129, 1135 (2d Cir. 1989) (holding that interpreter of witness statement was "no more than a language conduit" and therefore his translation did not create an additional layer of hearsay) (other citations omitted)).
Under the language-conduit or agency theory, the Nazemian court examined four factors it found relevant in determining whether the interpreter's statements should be attributed to the defendant. Id . at 527. These factors include: (1) "which party supplied the interpreter," (2) "whether the interpreter had any motive to mislead or distort," (3) "the interpreter's qualifications and language skill," and (4) "whether actions taken subsequent to the conversation were consistent with the statements as translated." Id . Balancing those factors, the Nazemian court ruled that the defendant and interpreter's statements were "identical for testimonial purposes." Id . at 528. Because the defendant, and not the interpreter, was the declarant, there were no hearsay or Confrontation Clause issues. Id .
In a post- Crawford case involving a Confrontation Clause challenge to the admission of an interpreter's out-of-court statement, the Ninth Circuit in Orm Hieng , 679 F.3d at 1139, ruled that its precedent Nazemian was reconcilable with Crawford and its progeny. The Orm Hieng court recognized that there may be "some tension" between the two cases because the test in Nazemian "stems from principles of the law of evidence" and Crawford could be read to divorce any Sixth Amendment analysis from the law of evidence. Id . at 1140. However, the court noted that, post- Crawford, the Supreme Court continues to use the vocabulary of evidence law and its cases "provide no clear guide with respect to the interplay, if any, between the Confrontation Clause and the law of evidence." Id . at 1141.
The Fifth Circuit Court of Appeals agreed with the Ninth Circuit that the Supreme Court's recent Confrontation Clause jurisprudence is not in conflict with the language-conduit theory. United States v. Budha , 495 Fed.Appx. 452, 454 (5th Cir. 2012), cert. denied , 568 U.S. 1164, 133 S.Ct. 1243, 185 L.Ed.2d 190 (2013). State appellate courts, both pre- and post- Crawford , have also followed the language-conduit theory when examining Confrontation Clause and hearsay challenges. See, e.g. , Correa v. Superior Court , 27 Cal.4th 444, 117 Cal.Rptr.2d 27, 40 P.3d 739, 747 (2002) (adopting language-conduit theory in a hearsay context); People v. Gutierrez , 916 P.2d 598, 601 (Colo. App. 1995) (interpreter was merely a language conduit for Confrontation Clause and hearsay issue); Hernandez v. State , 291 Ga.App. 562, 662 S.E.2d 325, 329 (2008) (no hearsay or Confrontation Clause issue with admission of interpreter's out-of-court statements because the statements of interpreter treated as statement of foreign-language speaker); Com. v. AdonSoto , 475 Mass. 497, 58 N.E.3d 305, 314 (Mass. 2016) (applying the Nazemian factors and concluding that an interpreter is agent of defendant for hearsay purposes); People v. Jackson , 292 Mich.App. 583, 808 N.W.2d 541, 552 (2011) (determining nurse's reports to law enforcement regarding defendant's "yes" or "no" hand-signal responses were not hearsay under language-conduit theory and defendant did not have right to confront nurse); State v. Patino , 177 Wis.2d 348, 502 N.W.2d 601, 610 (Wisc. App. 1993) (concluding that statements of interpreter in some circumstances should be regarded as the statements of the foreign-language speaker without creating an additional layer of hearsay).
*706 Lopez-Ramos relies on Charles , 722 F.3d at 1321-24, 1130-31, and Taylor v. State , 226 Md.App. 317, 130 A.3d 509, 521, 540 (2016), which hold that an interpreter's translation as to a defendant's statement in a foreign language is testimonial and therefore the defendant has a Sixth Amendment right to confront an interpreter. In Charles , 722 F.3d at 1321-24, and in Taylor , 130 A.3d at 513, the defendants made incriminating statements to law enforcement during questioning through the aid of an interpreter, and the courts ruled that both the foreign-language speaker and the interpreter were separate declarants. The Charles court reasoned that because language interpretation involves a concept-to-concept translation and not a word-to-word translation, the statements of the language interpreter and the defendant are not one in the same. 722 F.3d at 1324. The Taylor court concluded that the reasoning in Nazemian was irreconcilable with Crawford because the analysis in Nazemian depends on analogies to evidentiary rules regarding hearsay, and that it "premises the admissibility of the absent interpreter's statements upon the apparent reliability of the interpretations." 130 A.3d at 538. Lopez-Ramos, like the court in Taylor , asserts that the language-conduit theory in Nazemian is similar to the reliability analysis in Roberts , which was overruled by Crawford .
iii. The Nazemian approach is not in conflict with Crawford .
While Lopez-Ramos's arguments are not without merit, we are convinced by the majority view that the factors employed in Nazemian to determine whether an interpreter is a declarant does not run afoul of the Supreme Court's Confrontation Clause jurisprudence.[4] We recognize that the Nazemian test was derived from federal courts' hearsay analyses on whether an interpreter could be considered an agent for the purposes of Fed. R. Evid. 801(d)(2)(D). See Da Silva , 725 F.2d at 832 (citing 4 J. Weinstein & M. Berger, Evidence ¶ 801(d)(2)(C)[01], at 801-158 n.34 (1981) and 6 J. Wigmore, Evidence § 1810(2), at 376 (Chadbourn rev. 1976)). The Crawford court determined that "replacing categorical constitutional guarantees with open-ended balancing tests ... do[es] violence to [the framers'] design." 541 U.S. at 67-68, 124 S.Ct. at 1373. Because the Nazemian factors constitute a balancing test in a case involving a Confrontation Clause challenge, it may appear at first blush that the language-conduit theory is in tension with Crawford . But, just because a Confrontation Clause challenge was made, does not mean the Clause is implicated. Here, the factors examined under the language-conduit theory do not run afoul of Crawford because they are not employed to assess the reliability of an interpreter's extrajudicial statements for the sole purpose of determining admissibility. Instead, the factors are employed to answer a more fundamental question of the identity of the declarant, and whether the Confrontation Clause is even implicated.
Here, the district court did not err in employing the Nazemian factors in deciding a preliminary fact question-whether an interpreter is a declarant for the purposes of a Confrontation Clause or hearsay issue. The district court acted properly pursuant to Minn. R. Evid. 104(a), which allows district courts to examine various circumstances to decide whether a preliminary fact has been established by a preponderance of the evidence. See, e.g. , *707 In re Source Code Evidentiary Hearings in Implied Consent Matters , 816 N.W.2d 525, 538 (Minn. 2012) ; Bourjaily v. United States , 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Like in this case, district courts often act under rule 104(b) to make preliminary findings of fact that must be established before a statement may be admissible as an admission under the rule-801(d)(2) exemptions from hearsay. For example, to determine whether another person's statement is admissible as a defendant's "adoptive admission" under Minn. R. Evid. 801(d)(2)(B), a district court must first determine whether the defendant adopted the admission by conduct or statements which (1) were unequivocal, positive, and definite in nature, and (2) clearly showed that in fact the defendant intended to adopt the hearsay statements as his own. Goodridge , 352 N.W.2d at 388. Under Minn. R. Evid. 801(d)(2)(C) and (d)(2)(D) a district court may need to make a preliminary finding on whether a declarant was authorized to speak or was an agent of the speaker. See Carroll v. Pratt , 247 Minn. 198, 204, 76 N.W.2d 693, 698 (1956) (discussing whether an attorney had the authority to make extrajudicial admissions on behalf of client); Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co. , 285 Minn. 264, 267, 173 N.W.2d 9, 11 (1969) (requiring that, to be admissible as an admission, statements made by an agent must be (1) against the principal's interests at the time of trial, (2) made in the scope of the agent's authority while engaged in the business of his principal, and (3) statements of fact). When the state seeks to introduce an out-of-court statement by the defendant's coconspirator under Minn. R. Evid. 801(d)(2)(E), it must first satisfy a set of factors defined in the rule by a preponderance of the evidence. State v. Brist , 812 N.W.2d 51, 54 (Minn. 2012) ; see Bourjaily , 483 U.S. at 175, 107 S.Ct. at 2778. And when a district court finds that a preliminary fact is established under rule 104, allowing a statement to be admissible under a rule-801(d)(2) exemption to the hearsay rule, that decision might be determinative of whether a statement can be admitted without violating the Confrontation Clause. See Brist , 812 N.W.2d at 57 (holding post- Crawford that admission into evidence of out-of-court statements made in furtherance of conspiracy under rule 801(D)(2)(E) did not violate the Confrontation Clause); Vill. of New Hope v. Duplessie , 304 Minn. 417, 421, 231 N.W.2d 548, 551 (1975) (stating pre- Crawford that: "In a literal sense, an adoptive admission manifested in an unequivocal manner constitutes a waiver of ... the right ... to be confronted by one's accuser."). Likewise, here, the district court properly used the Nazemian factors to make a preliminary finding as to the identity of the declarant in order to determine whether the Confrontation Clause was implicated and whether the statements were Lopez-Ramos's admissions.[5]
We are not persuaded that the nuanced nature of concept-to-concept language interpretation automatically turns an interpreter into a declarant. Criminal defendants frequently waive important rights and plead guilty via interpreters. In doing so, we presume that the interpreter's *708 words in English are those of the defendant, and we do not treat such statements as coming from an independent declarant or as questionable hearsay.
Finally, an interpreter and their words do not fit into our normal definitions of "declarant" and "statement." A "declarant" is simply a person "who has made a statement." Black's Law Dictionary 467 (9th ed. 2009); Minn. R. Evid. 801(b). A "statement" is a "verbal assertion" or "nonverbal conduct intended as an assertion." Black's 1539 ; Minn. R. Evid. 801(a). Interpreters, like the one here, speak in the first person. But, we do not treat the interpreter's words literally, as if they made a verbal assertion about themselves. Normally, on hearing the interpreter's English words, we assume the foreign-language speaker made the verbal assertion, not the interpreter. Additionally, when an interpreter is speaking in the first person, the truth of the matter asserted flows back to the original foreign-language speaker. The Nazemian factors allow a district court to examine on a case-by-case basis as to whether these assumptions prove true, and in some cases a district court may rightly find that an interpreter became a declarant.
Therefore, when the state seeks to admit into evidence a criminal defendant's admissions made through an interpreter, upon a Confrontation Clause or hearsay objection a district court must determine as a preliminary matter whether the interpreter's translation can fairly be attributable to the defendant, or whether the interpreter is a separate declarant. The preponderance of the evidence standard applies and the state, as the proponent of the evidence, has the burden to establish the preliminary fact. In re Source Code Evidentiary Hearings , 816 N.W.2d at 538 ; see, e.g. , State v. Roman Nose , 649 N.W.2d 815, 824 (Minn. 2002) (determining that proponent of scientific evidence has the burden of establishing its admissibility by establishing the relevant requirements); see also 1 McCormick on Evidence § 53 (Kenneth S. Broun ed., 7th ed. 2016) ("As a general proposition, the proponent of the evidence has the burden of establishing the preliminary facts."). In making this determination, the district court should consider on a case-by-case basis: (1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications and language skill, and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. This is not an exhaustive list and other factors may be relevant.
B. The Confrontation Clause is not applicable because Lopez-Ramos was the declarant of the translated statements.
On application of the Nazemian factors to the record in this case, we conclude that the district court did not clearly err in its preliminary finding of fact that the interpreter's translation should be viewed as Lopez-Ramos's statement, and therefore Lopez-Ramos was the sole declarant. Under the first factor, police supplied the interpreter through calling an interpreter service over the telephone. Police were able to choose the language but not the specific interpreter. Other courts applying this factor have ruled that the fact that the government supplied the interpreter is not dispositive, and this factor has a greater weight when the interpreter acts both as a translator and a law-enforcement officer. Compare Da Silva , 725 F.2d at 832 (government employee could still act as interpreter and agent of defendant) with United States v. Sanchez-Godinez , 444 F.3d 957, 960 (8th Cir. 2006) (federal agent could not be considered a *709 "language conduit" when agent "Mirandized" defendant and asked questions he normally would ask in his capacity as a law-enforcement agent). Second, while the police supplied the interpreter, there is no evidence here that the interpreter had any motive to mislead or distort. To the contrary, as an employee for the interpreter service, the interpreter had every motive to render an accurate translation for both the police and Lopez-Ramos so that police would continue to contract with his company. Third, the state did not provide evidence of the interpreter's qualifications, but the videotaped interrogation and the behavior of Lopez-Ramos during the interrogation is evidence that the interpreter was skilled. Lopez-Ramos successfully communicated with Officer Brouillet on topics concerning his date of birth, current and past residences, family and work history. During the interrogation Lopez-Ramos gave no indication that he had difficulty understanding the interpreter. While Lopez-Ramos testified at trial that he did not fully understand the interpreter, the recording contradicts this assertion. On the fourth factor, Lopez Ramos's statements that he did not use a condom and had ejaculated were consistent with his earlier statement, as translated, that he had "intercourse" with the child. Had there been a mistranslation of the word "intercourse," Lopez-Ramos likely would have been confused by Brouillet's follow-up questions. Additionally, while Lopez-Ramos's first language is Mam, the video recording and trial transcript show that he had a sufficient mastery of Spanish to effectively communicate. See Da Silva , 725 F.2d at 831 (noting that while defendant's first language was Portuguese, evidence showed defendant's mastery of Spanish, the interpretation language).
On balance, the district court did not clearly err in its finding that the interpreter's words in English can fairly be attributed to Lopez-Ramos. Because Lopez-Ramos is the declarant and his statements were entered into evidence as his own admissions, no Confrontation Clause violation exists, as a criminal defendant does not have the right to confront himself. United States v. Brown , 441 F.3d 1330, 1358-59 (11th Cir. 2006) ; Goodridge , 352 N.W.2d at 388 n.2 ("[A] party cannot object to his failure to have a chance to cross-examine himself."). The district court did not abuse its discretion in admitting Lopez-Ramos's translated statements into evidence after the defense's objection on Confrontation Clause grounds because the Clause was not implicated here.
Because the admission of Lopez-Ramos's translated statements does not implicate the Confrontation Clause, we do not address whether the interpreter's statements were testimonial.
II. Hearsay
Lopez-Ramos also challenges the admission of his translated statements on hearsay grounds.
"Hearsay" is an out-of-court statement of a declarant offered into evidence to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Such statements, though, are admissible as admissions of a party-opponent, and are exempted from the hearsay definition, when the statement is (1) offered against a party, and (2) the party's own statement. Minn. R. Evid. 801(d)(2)(A).
We have already determined under the Nazemian factors that Lopez-Ramos was the declarant of the translated statements. The translated statements, admitted through the video recording of the interrogation and Officer Brouillet's testimony, were Lopez-Ramos's own statements and were offered into evidence as proof of the matter asserted-that Lopez- *710 Ramos had intercourse with the child. The state offered the statements against Lopez-Ramos as a party opponent. Therefore, the district court did not abuse its discretion in admitting the statements into evidence because they were admissible under Minn. R. Evid. 801(d)(2)(A).[6]
Because we find no error on hearsay or Confrontation Clause grounds, we do not address the parties' arguments regarding whether the harmless-error or plain-error standard should apply.
DECISION
We affirm because the district court did not err by employing the Nazemian factors to determine that Lopez-Ramos, and not the interpreter, was the declarant, and that the translated statements were fairly attributable to Lopez-Ramos. Because Lopez-Ramos's admissions were his own, the district court did not err in determining that he did not have a right to confront the interpreter under the Sixth Amendment's Confrontation Clause, and that Lopez-Ramos's translated statements were not inadmissible hearsay.
Affirmed.

The quotation of Lopez-Ramos's interrogation in this opinion comes directly from the interpreter's English words in the video exhibit. An interpreter's creation of a transcript for trial presents other Confrontation Clause and hearsay issues that we do not address here. See United States v. Curbelo , 726 F.3d 1260, 1271 (11th Cir. 2013).

The supreme court did not specify the subpart-(A) through (E)-under Minn. R. Evid. 801(d)(2), to which it was referring.

To support its argument that Lopez-Ramos is the sole declarant, the state also cites Minn. Stat. §§ 611.32, subd. 2, and .33, subd. 2 (2016), which regulate the use of interpreters in legal proceedings. We are not convinced that these statutes shed light on whether a foreign-language speaker should be considered the sole declarant when an interpreter is used to translate their words into English. We also note that the statutes are not applicable to this case because police had not yet apprehended or arrested Lopez-Ramos and no legal proceedings had commenced. See Minn. Stat. § 611.32, subd. 2 (requiring law enforcement to obtain a qualified interpreter "[f]ollowing the apprehension or arrest of a person disabled in communication for an alleged violation of a criminal law"); Minn. Stat. § 611.33, subd. 2 (requiring a qualified interpreter to take an oath in court or at a legal proceeding); Mitjans , 408 N.W.2d at 827, 829 (determining that Minn. Stat. §§ 611.30 to .33 apply to the interrogation of a criminal suspect detained after arrest).

Decisions from foreign authorities are not binding, but they may be persuasive. Mahowald v. Minn. Gas Co. , 344 N.W.2d 856, 861 (Minn. 1984).

Findings of fact on a preliminary matter are reviewed for clear error. Bourjaily , 483 U.S. at 181, 107 S.Ct. at 2782 (applying the clear-error standard of review to a district court's factual findings when determining whether a conspiracy existed under Fed. R. Evid. 801(d)(2)(E) ); In re Source Code Evidentiary Hearings , 816 N.W.2d at 537. But appellate courts review a district court's ultimate decision on whether to admit evidence for an abuse of discretion, and whether the admission of certain evidence violated a defendant's Confrontation Clause rights is reviewed de novo. State v. Dobbins , 725 N.W.2d 492, 505 (Minn. 2006).

We note that many federal courts of appeal and state appellate courts have determined that an interpreter is "viewed as an agent of the defendant; hence the translation is attributable to the defendant as his own admission and is properly characterizable as nonhearsay under Rule 801(d)(2)(C) or (D)." Sanchez-Godinez , 444 F.3d at 960 (citing Da Silva , 725 F.2d at 831 ); see also AdonSoto , 58 N.E.3d at 312 ("In these circumstances, the interpreter may properly be considered an agent of the defendant for hearsay purposes, negating exclusion on hearsay grounds."). We think our conclusion that the interpreter in this case is not a declarant, though, is more consistent with cases that conclude that a defendant's interpreted statements are admissible under rule 801(d)(2)(A). See Al-Bihani v. Obama , 590 F.3d 866, 879 (D.C. Cir. 2010) (Guantanamo Bay detainee's interpreted interrogation answers not hearsay under 801(d)(2)(A)); United States v. Stafford , 143 Fed.Appx. 531, 533 (4th Cir. 2005) (defendant's translated statements to coconspirator admissible under Fed. R. Evid. 801(d)(2)(A) when person who received the translated statements testified to them). We therefore express no opinion on whether a defendant's translated statements are admissible under Minn. R. Evid. 801(d)(2)(C) or (D).