GILDEA, Chief Justice.
*415 This case presents the questions of whether the admission of statements made by appellant using a foreign language interpreter violates the Confrontation Clause of the United States Constitution and hearsay rules. Because we conclude that the Confrontation Clause is not violated and the statements are not subject to the hearsay rules, we affirm the decision of the court of appeals.
FACTS
In May 2016, the State charged appellant Cesar Rosario Lopez-Ramos with one count of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(a) (2018).[1] Several days earlier, a county child protection worker contacted police regarding the possible sexual abuse of a 12-year-old female. During the subsequent investigation, the victim and her parents identified Lopez-Ramos as the only suspect.
Police officers made contact with Lopez-Ramos, and he agreed to provide a statement. An officer transported Lopez-Ramos to the county law enforcement center.[2] In an interview room, the officer started the recording system[3] and called the AT&T LanguageLine, a foreign language translation service.[4] The officer requested a Spanish interpreter.[5] Once a Spanish interpreter was on the line, the officer used the speaker function on the telephone to conduct an interview in sequential interpretation, meaning that the officer asked a question in English, the interpreter translated the question from English to Spanish, Lopez-Ramos responded in Spanish, and the interpreter translated the response from Spanish to English. During the interview, Lopez-Ramos admitted to the officer that he had sexual intercourse with the victim on one occasion.
The case proceeded to a jury trial. During a conference on the first morning of the trial, Lopez-Ramos told the district court that he intended to object to the admission of his translated statements. Lopez-Ramos argued that the admission of *416 the translated statements into evidence would violate the Sixth Amendment's Confrontation Clause and Minnesota's hearsay rules because the State was not going to call the interpreter to testify during the trial.
The district court asked the State to make a foundational offer of proof regarding the interpreter used to translate the statements made by Lopez-Ramos from Spanish to English. The State explained that the interpreter's identification and physical location were never verified, primarily because Lopez-Ramos never formally challenged the accuracy of the translation. The district court concluded that the interpreter was acting as a "language conduit" during the interview, meaning that the statements were attributable to Lopez-Ramos as the declarant. The district court held that the admission of the translated statements did not violate the Confrontation Clause or hearsay rules, and therefore overruled the objection by Lopez-Ramos.
During the jury trial, the officer testified that Lopez-Ramos responded directly to the translated questions and never requested clarification from the interpreter. The officer told the jury that Lopez-Ramos admitted during the interview to having sexual intercourse with the victim.
The video recording of the interview was admitted into evidence and played for the jury. The video shows that Lopez-Ramos was able to fully participate in the interview and he never expressed any confusion or stated that he did not understand the questions asked by the officer and translated by the interpreter.[6]
The victim testified during the trial that Lopez-Ramos sexually penetrated her. Lopez-Ramos testified in his own defense and denied having any sexual contact with the victim.[7] Lopez-Ramos told the jury that during the police interview, he was intoxicated and did not understand some of the questions asked by the officer.
The jury found Lopez-Ramos guilty of first-degree criminal sexual conduct. The district court convicted Lopez-Ramos of that offense and sentenced him to 144 months in prison.
Lopez-Ramos appealed his conviction, arguing that the admission of his translated statements violated the Confrontation Clause and hearsay rules. In a published opinion, the court of appeals upheld the district court's ruling that the admission of the interpreter's translated statements did not violate the Confrontation Clause or hearsay rules. State v. Lopez-Ramos , 913 N.W.2d 695, 699 (Minn. App. 2018). The court of appeals held that "when the state seeks to admit into evidence a criminal defendant's admissions made through an interpreter, upon a Confrontation Clause or hearsay objection a district court must determine as a preliminary matter whether the interpreter's translation can fairly be attributable to the defendant, or whether the interpreter is a separate declarant." Id. at 708. The court of appeals addressed four factors: (1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications, and (4) whether actions taken subsequent to the *417 conversation were consistent with the statements as translated. Id. Applying the factors, the court of appeals determined that the interpreter's translated statements were attributable to Lopez-Ramos as the declarant. Id. at 709. Therefore, the court of appeals concluded that no Confrontation Clause violation occurred and the statements were admissible over the hearsay objection as admissions by a party-opponent under Minn. R. Evid. 801(d)(2)(A). 913 N.W.2d at 709-10.
We granted Lopez-Ramos's petition for review.
ANALYSIS
On appeal, Lopez-Ramos argues that the admission of his translated statements violates the Confrontation Clause. He also contends that his translated statements are inadmissible hearsay evidence. See Minn. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court or by the Legislature."). We consider each issue in turn.[8]
I.
We turn first to the argument by Lopez-Ramos that the admission of the video recording of his interview and the officer's testimony regarding his statements violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The United States Supreme Court has recognized that "the principal evil at which the Confrontation Clause was directed" was the use of ex parte or one-sided "examinations as evidence against the accused." Crawford v. Washington , 541 U.S. 36, 50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court stated that the Confrontation Clause must be viewed with a historical focus, including its common-law heritage. See id. The common law did not allow the admission of testimonial out-of-court statements by a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.[9] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 49-50, 53-54, 124 S.Ct. 1354. In other words, the primary objective behind the adoption of the Confrontation Clause was to regulate the admission of testimonial *418 hearsay by witnesses against the defendant.
Prior to Crawford , the Supreme Court observed that its case law "has been largely consistent with" the original text and meaning of the Confrontation Clause. See id. at 57, 124 S.Ct. 1354. An aberration occurred in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), when the Supreme Court departed from historical principle and allowed the admission of testimonial hearsay based upon a finding of reliability only. See Crawford , 541 U.S. at 60, 124 S.Ct. 1354 ; Roberts , 448 U.S. at 66, 100 S.Ct. 2531. But in Crawford , the Supreme Court discarded the "unpredictable and inconsistent" reliability principle espoused in Roberts and returned to the original text and meaning of the Confrontation Clause. See 541 U.S. at 66, 68 n.10, 124 S.Ct. 1354.
In Crawford , the government charged the defendant with assault and attempted murder for stabbing a man who allegedly sexually assaulted his wife. Id. at 38-40, 124 S.Ct. 1354. The defendant argued that the stabbing was done in self-defense. Id. at 40, 124 S.Ct. 1354. The government sought the admission of statements made by the defendant's wife to police officers regarding the stabbing because the wife's statements refuted the defendant's self-defense claim. Id. Even though the wife did not appear or testify during the trial, her statements to the police were admitted into evidence and used against him, and the jury found the defendant guilty. Id. at 40-41, 124 S.Ct. 1354.
The Supreme Court held that the admission of the wife's statements to police violated the Confrontation Clause. Id. at 68-69, 124 S.Ct. 1354. The Supreme Court abandoned the reliability analysis set forth in Roberts , see id. at 67, 124 S.Ct. 1354, and returned to the original text of the Confrontation Clause, noting that the clause specifically applies to "witnesses against the accused-in other words, those who bear testimony," id. at 51, 124 S.Ct. 1354 (internal quotation marks omitted) (citation omitted). The Supreme Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not," and the text of the Confrontation Clause "reflects an especially acute concern with [the] specific type of out-of-court statement." Id. In applying the Confrontation Clause to the facts of Crawford , the Supreme Court concluded that the defendant had a right to confront his wife about her statements to police officers that arguably defeated his self-defense claim. See id. at 68-69, 124 S.Ct. 1354. In other words, the defendant had a constitutional right to confront a witness who made testimonial statements that were admitted against the defendant.
Lopez-Ramos relies on Crawford and argues that the translated statements he made to the police are like the statements made by the defendant's wife to the police in Crawford . We disagree. The statements at issue in Crawford were undoubtedly made by a third party-the defendant's wife. This case does not involve a third-party declarant whose testimony is offered against the defendant. The statements at issue here were made by the defendant himself in Spanish and then translated into English by a foreign language interpreter.[10] The facts of this case then are materially *419 different from those presented in Crawford.
But the bedrock principle of Crawford still controls and compels the result that we reach. As the Supreme Court noted, the Confrontation Clause specifically applies to "witnesses against the accused -in other words, those who bear testimony." Crawford, 541 U.S. at 51, 124 S.Ct. 1354 (emphasis added) (internal quotation marks omitted) (citation omitted). The Supreme Court observed that the Confrontation Clause "reflects an especially acute concern" with statements made by a witness or "[a]n accuser who makes a formal statement to government officers." Id.
This case requires that we apply the underlying principle of Crawford to the role of a foreign language interpreter. The function of an interpreter is to convert a statement from one language to another, processing the linguistics in order to allow parties to understand one another. The role of the interpreter is not to provide or vary content; the role of the interpreter is to relay what the defendant said in another language. In this way, an interpreter is not a witness against the defendant. See United States v. Solorio , 669 F.3d 943, 951 (9th Cir. 2012) (concluding that the Confrontation Clause was not violated when an interpreter translated in-court statements of a government informant because the defendant had an opportunity to cross-examine the informant and "[t]he interpreters, who only translated [the informant's] in-court statements, were not themselves witnesses who testified against [the defendant]."). The interpreter is simply the vehicle for conversion or translation of language. To be sure, the role of an interpreter can be fulfilled by a machine or someone using a foreign language dictionary to look up each word for the proper conversion. If a machine or foreign language dictionary is used for the translation, there would be no suggestion that either served as a witness against the declarant. The statement would still be attributable to the declarant as his or her own statement. The interpreter simply makes the language-conversion process more efficient and effective.[11]
The use of interpreters has become an important part of our criminal justice system. For example, under Minnesota law, when the police arrest someone who, because of difficulty speaking or understanding English, "cannot fully understand the proceedings or any charges," Minn. Stat. § 611.31 (2018), the police "shall obtain an interpreter at the earliest possible time," Minn. Stat. § 611.32, subd. 2 (2018). Section 611.32 requires that the police communicate with the arrested person "with the assistance of the interpreter." Id. And the interpreter must "take an oath, to make to the best of the interpreter's skill and judgment *420 a true interpretation." Minn. Stat. § 611.33, subd. 2 (2018). We have recognized that "[t]he obvious purpose of the oath requirement in such a situation is to impress upon the interpreter that he is legally obliged to interpret fairly and accurately." State v. Mitjans , 408 N.W.2d 824, 829 (Minn. 1987) ;[12] cf. Code of Prof'l Responsibility for Interpreters in the Minn. State Court Sys. Canon 1 (requiring that interpreters provide "a complete and accurate interpretation ... without altering, omitting, or adding anything to the meaning of what is stated or written").
Mindful of the role played by a foreign language interpreter and centering our analysis on the text of the Confrontation Clause, we conclude that use of an interpreter to translate a statement from one language to another does not implicate the Confrontation Clause. The Confrontation Clause is not implicated because the act of processing the statement from one language to another does not transform the interpreter into a witness against the defendant.
The result we reach is consistent with the result reached in the majority of courts that have considered the question to date. These courts have sided with the Ninth Circuit's conclusion in Nazemian v. United States , 948 F.2d 522 (9th Cir. 1991), that the Confrontation Clause is not violated by the admission of translated statements. Id. at 526-28. See Kimberly J. Winbush, Annotation, Application of Confrontation Clause Rule to Interpreter's Translations or Other Statements-Post -Crawford Cases , 26 A.L.R.7th Art. 1, § 2 (2017). Reasoning that a generally unbiased and adequately skilled foreign language translator simply serves as a "language conduit," these courts have concluded that the translated statement is considered to be the statement of the original declarant and not the translator. Id. Accordingly, the Confrontation Clause is not implicated.[13]
*421 Lopez-Ramos relies on the minority view, citing United States v. Charles , 722 F.3d 1319 (11th Cir. 2013), and Taylor v. State , 226 Md.App. 317, 130 A.3d 509 (Md. Ct. Spec. App. 2016). See Winbush, Application of Confrontation Clause Rule , supra , at §§ 2, 7. The Charles court held that, because foreign language interpretation involves a concept-to-concept translation and not a word-to-word translation, the statements of the language interpreter and the defendant are not identical. See 722 F.3d at 1324, 1327 n.9. And the Taylor court held that the reasoning in Nazemian was irreconcilable with Crawford because the analysis in Nazemian depends on analogies to the evidentiary rules and premises the admissibility of an interpreter's statements on assumed reliability. See 130 A.3d at 538-39. Both Charles and Taylor likened the interpreter's translation to the testimony of a third-party witness and held that Crawford guaranteed the defendant a right to cross-examination. 722 F.3d at 1328 ; 130 A.3d at 540. Because the facts of Crawford are materially different from cases involving an interpreter, the underlying logic of decisions in cases like Charles and Taylor is unpersuasive.
Finally, in urging us to conclude that the admission of his translated statement violates the Confrontation Clause, Lopez-Ramos relies on Bullcoming v. New Mexico , 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), Melendez-Diaz v. Massachusetts , 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and State v. Caulfield , 722 N.W.2d 304 (Minn. 2006). In Bullcoming and Melendez-Diaz , the Supreme Court held that the admission of forensic laboratory reports into evidence without calling the laboratory analyst who prepared the report to testify violated the Confrontation Clause. See 564 U.S. at 663, 131 S.Ct. 2705 ; 557 U.S. at 311, 129 S.Ct. 2527. The focus of the holdings in Bullcoming and Melendez-Diaz was the ability of the defense to verify the accuracy of the work by the analyst and the test result included in the report.
These cases are distinguishable because, unlike a forensic laboratory analyst, a foreign language interpreter simply converts information from one language to another language without adding content. Compare Bullcoming , 564 U.S. at 659-60, 131 S.Ct. 2705 (rejecting the argument that an analyst was a " 'mere scrivener' " because the analyst "reported more than a machine-generated number"). Moreover, a lab analyst is obviously a witness who bears testimony against the defendant. A laboratory analyst must input knowledge and content in order to take a biological sample and generate a report on the sample, including a definitive test result. The test result is then offered as evidence against the defendant. As the Court noted in Bullcoming , *422 the forensic laboratory analyst did more than a simple conversion of the information from one format to another; instead, the analyst certified and verified the controls for accuracy and followed protocols to reach a definitive test result. See 564 U.S. at 659-60, 131 S.Ct. 2705.
In contrast to the lab analyst analogy suggested by Lopez-Ramos, a foreign language interpreter is more like a court reporter. Court reporters translate oral communications into a written format, conveying information but not adding content.[14] See Minn. Stat. § 486.02 (2018) (stating that "stenographer[s] shall take down all questions in the exact language thereof, and all answers thereto precisely as given by the witness or by the sworn interpreter"). A court reporter is not a witness against the defendant. Rather, court reporters create a written record of court proceedings. When that record is utilized in future proceedings, calling a court reporter to testify is illogical because the written record does not consist of the court reporter's statements but instead consists of the statements made by the actual declarants in the court proceeding. The same should be true for foreign language interpreters.
If an interpreter fails to interpret accurately or fully, or questions regarding authenticity arise, the proper objection is to a lack of foundation, not violation of the Confrontation Clause.[15] Cf. State v. Daniels , 361 N.W.2d 819, 828 (Minn. 1985) (concluding that "[t]he trial court properly excluded ... photographs for lack of foundation" where the photographs "did not accurately depict the scene"). Notably, in this case, Lopez-Ramos never formally challenged the adequacy or accuracy of his translated statements. See State v. Sanchez-Diaz , 683 N.W.2d 824, 835 (Minn. 2004) ("A defendant bears the burden of proving that the translation was inadequate."). Moreover, during the interview, Lopez-Ramos never asked the interpreter for clarification. The officer testified during the jury trial that the responses given by Lopez-Ramos during the interview were consistent with the questions being asked of him. The video shows that Lopez-Ramos was able to fully participate in the interview and he never expressed any confusion or stated that he did not *423 understand the questions asked by the officer and translated by the interpreter. And the officer recorded the entire interview, preserving the entire translation for review. See id. ("[T]o ensure the admissibility of statements taken with an interpreter, prudent police investigators should comply with the statutory requirements and, additionally, either record the statement and/or reduce it to writing in the defendant's primary language."); Mitjans , 408 N.W.2d at 831 (noting that police could "tape-record[ ] the interrogation of defendant, thereby making an accurate record of what was said").
Ultimately, we conclude that Lopez-Ramos is the declarant of the statements in this case. Use of a foreign language interpreter to convert the statements by Lopez-Ramos from Spanish to English does not implicate the Confrontation Clause because the interpreter is not a witness who bears testimony against Lopez-Ramos. Instead, the interpreter merely converted the statement of Lopez-Ramos from one language to another. The Confrontation Clause "simply has no application because a defendant cannot complain that he was denied the opportunity to confront himself." United States v. Hieng , 679 F.3d 1131, 1140 (9th Cir. 2012). We therefore hold that the district court's admission of the translated statements Lopez-Ramos made to the police did not violate the Confrontation Clause.
II.
We turn next to Lopez-Ramos's contention that the admission of his translated statements violates the rule against hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Hearsay is generally not admissible. Minn. R. Evid. 802. But a statement offered against a party that is the party's own statement is not hearsay. Minn. R. Evid. 801(d)(2)(A).
Our holding that Lopez-Ramos was the declarant of his translated statements controls the hearsay analysis. If Lopez-Ramos was the declarant of the statements, and the State offered the statements against him, the statements are not hearsay under Minn. R. Evid. 801(d)(2)(A), and are therefore admissible. Accordingly, we hold that the district court did not abuse its discretion in admitting the translated statements into evidence over the hearsay objection by Lopez-Ramos.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
Dissenting, Hudson, Lillehaug, Thissen, JJ.
DISSENT

Specifically, Lopez-Ramos was charged with the sexual penetration of a victim under 13 years of age when he was more than 36 months older than the victim.

There is no indication that Lopez-Ramos was placed under arrest at the time of the interview by the law enforcement officer. But the officer read Lopez-Ramos his Miranda rights before starting the voluntary interview. Based on the circumstances, we assume without deciding that the interview was a custodial interrogation.

The law enforcement center utilizes a recording system called WatchGuard that records digital video and audio in its interview rooms.

The officer testified that he uses the AT&T LanguageLine on a regular basis, but gave no further information about the service. According to the website, the AT&T LanguageLine provides interpreting services to government agencies across the country, including police/fire, schools, social services, and courts. See LanguageLine Solutions, Government Interpreting, https://www.languageline.com/industries/government-interpreting (last viewed May 28, 2019) [opinion attachment].

Lopez-Ramos's native language is Mam, a Mayan language spoken in Guatemala. Lopez-Ramos's second language is Spanish. His ability to speak and understand English is limited.

The jury was provided with a transcript of the interview while the video was played in open court. The transcript contained only the officer's statements in English and the English translation of Lopez-Ramos's statements. The district court instructed the jury that the transcript was provided to assist with their understanding of the interview, but the recording itself was the actual evidence. The transcript was not admitted into evidence.

During the trial, Lopez-Ramos testified using certified Spanish interpreters.

Although Lopez-Ramos challenged the admissibility of his interpreted statement, he made no objection to the accuracy or foundational reliability of the translation. Accordingly, there is no question before us as to the accuracy or reliability of the translation. When a defendant does object to the foundational reliability of a translated statement, the district court must engage in the necessary analysis to determine whether the translation included any material errors. See, e.g., State v. Lee , 494 N.W.2d 475, 481 (Minn. 1992). That analysis is unnecessary here.

The dissent discusses a historical impetus for the Confrontation Clause, the 1603 trial of Sir Walter Raleigh, and suggests that "the exact same circumstances are present" in this case. The dissent is not correct. The Raleigh trial involved the admission of a statement made by an alleged accomplice to the crime, Lord Cobham, someone who was clearly a witness against Raleigh. See Crawford , 541 U.S. at 44, 124 S.Ct. 1354 (discussing the Raleigh trial). Raleigh objected to the admission of the statement and demanded that his accomplice be called as a witness and subjected to cross-examination. See id. The facts of the present case are entirely distinguishable. In this case, the statements admitted during the trial were not made by a criminal accomplice of Lopez-Ramos. He acted alone during the commission of his crime. Moreover, Lopez-Ramos did not object to the accuracy of his statements or the foundation for their admission. Instead, he simply argued that the Confrontation Clause and hearsay rules prohibited the admission of his translated statements.

The State argues that our analysis in Miller v. Lathrop , 50 Minn. 91, 52 N.W. 274, 274 (1892) (describing an interpreter as the "agent" of the party for whom the interpreter is translating), is dispositive of the question presented here. Miller was a civil action to recover possession of personal property, and the plaintiff spoke Polish but made statements to the defendant using an interpreter. Id. We determined that the interpreter's statements were "not in the nature of hearsay" because "[w]hen two persons voluntarily agree upon a third to act as interpreter between them, the latter is to be regarded as the agent of each to translate and communicate what he says to the other, so that such other has a right to rely on the communication so made to him." Id. Miller is not dispositive because the question presented in that civil case did not implicate the Confrontation Clause.

The dissent poses a hypothetical suggesting that if Lopez-Ramos and the police officer were seated in different rooms and an individual went between rooms repeating the statements made by Lopez-Ramos, the individual or "conduit" would be required to testify regarding the truth and accuracy of the statements he or she relayed to the officer. The obvious flaw with the hypothetical is that it does not recognize the difference between the function of an interpreter and the function of a witness who is offering testimony against the accused. The hypothetical therefore is not relevant or applicable to the facts of this case.

In Mitjans , a defendant made statements in Spanish to a Spanish-speaking police officer, who translated the statements into English to another officer. 408 N.W.2d at 826-27. In analyzing the defendant's challenge to the admission of this statement, we declined to directly answer the question of whether the interpreter or the defendant was the declarant of the statements, but noted that "under the agency theory of admissibility, the case for admission of the defendant's statements in a criminal prosecution is certainly stronger if the interpreter on whose interpretation the witness relies is the defendant's own interpreter or an independent interpreter appointed to assist the defendant rather than one employed as a police officer." See id. at 830-31.
Lopez-Ramos points to our comment in Mitjans , 408 N.W.2d at 832, that "[t]ranslation is an art more than a science, and there is no such thing as a perfect translation of a defendant's testimony," as demonstrating the complex nature of foreign language translation and argues that in this case, the interpreter should be designated as the declarant of his translated statements. An important difference in this case, however, is that the interpreter was not a police officer, but an employee of an independent entity. See id. at 831 (noting that the statute requires "the appointment of an independent interpreter" and that "prudent police investigators who wish to reduce substantially the risk of subsequent suppression of statements taken from suspects with language handicaps are advised to comply with the statutory requirements ...").

The language-conduit theory requires a case-by-case determination. Winbush, Application of Confrontation Clause Rule , supra , at § 2. For example, in Nazemian , the Ninth Circuit held that, under certain circumstances, a witness may testify regarding statements made by a defendant through a foreign language interpreter without raising Confrontation Clause concerns because the statements can be properly viewed as the defendant's own statements. See 948 F.2d at 527-28. Using the language-conduit or agency theory, the Nazemian court created a four-factor test to assess and determine whether an interpreter's statements can be attributed to the defendant as the declarant: (1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications and language skill, and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. Id. at 527. Balancing the factors, the Ninth Circuit in Nazemian concluded that the defendant was the declarant of the interpreted statements and the Confrontation Clause did not apply. Id. at 528.
In this case, the district court applied the same factors, noting that no evidence was presented suggesting that the translation was inaccurate or that the interpreter had a motive to distort the translation. The district court also noted that although the State procured the interpreter, "it was not an interpreter specifically selected for the defendant." Under these circumstances, the district court concluded that the translated statements could be properly viewed as the statements of Lopez-Ramos and not the statements of the interpreter. The Nazemian factors may be helpful in a given case, but the overriding principle under the Confrontation Clause is whether the interpreter is being asked to be a witness against the defendant. In this case, it is clear that the answer to the question is "no."

The purpose of a court reporter is to make a record of what was said during a trial or hearing or deposition, regardless of whether an appeal follows, by converting oral proceedings into a written record. The court reporter does not add content. The same is true for an interpreter, who converts an oral conversation from one language to another. See, e.g., United States v. Anguloa , 598 F.2d 1182, 1186 n.5 (9th Cir. 1979) ("An [i]nterpreter really only acts as a transmission belt or telephone. In one ear should come in English and out comes Spanish ...." (internal quotation marks omitted)); People v. Mejia-Mendoza , 965 P.2d 777, 781 (Colo. 1998) ("The role of an interpreter ... is to act as a conduit by passing information between two participants, translating their words precisely without adding any of his or her own.").

The reasoning of the dissent appears to be premised primarily on the assumption that "interpreters make mistakes." Indeed, the dissent notes that during the trial in this case, the interpreter translating the testimony of Lopez-Ramos from Spanish to English corrected the translation of one word during Lopez-Ramos's testimony, changing the translated word "drunk" to "fear." Certainly, we cannot assume that the conversion of words from one language to another is always perfect, whether it is done by a human or a machine or a book. Linguistics are complicated, and if concerns exist about the accuracy of the translation, those concerns should be resolved in the context of foundation objections. As explained above, Lopez-Ramos did not raise foundational objections here. Accordingly, no foundational concerns are before us in this case.